**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL No. 2724 16-MD-2724 Hon. Cynthia M. Rufe |
| THIS DOCUMENT RELATES TO: | 19-cv-6044 |
| *Reliable Pharmacy et al. v. Actavis Holdco U.S., Inc. et al.* | ORAL ARGUMENT REQUESTED |

**RED OAK SOURCING, LLC'S INDIVIDUAL MEMORANDUM OF LAW IN SUPPORT
OF PURCHASING DEFENDANTS' JOINT MOTION TO DISMISS THE
INDIRECT RESELLER PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

Defendant Red Oak Sourcing, LLC ("Red Oak") respectfully files this Individual Memorandum of Law in support of the Purchasing Defendants' Joint Motion to Dismiss the Indirect Reseller Plaintiffs' (the "IRPs'") Amended Class Action Complaint (Doc. 61) (the "Complaint") pursuant to Fed. R. Civ. P. 12(b)(6). While Red Oak joins fully in the Purchasing Defendants' Joint Memorandum of Law in support of the Motion to Dismiss (the "Joint Memorandum"), Red Oak writes separately to explain why the Complaint is especially deficient as against Red Oak.

While Red Oak includes itself among the "Purchasing" Defendants as defined in the Joint Motion to Dismiss, in reality Red Oak is neither a "purchaser" nor a seller of drugs. It has no motive to enter into a "fair share" conspiracy with the Manufacturer Defendants, and there are no facts pled to support the conclusory claim that it has done so. In fact, the Complaint does not even allege that Red Oak joined in *any* of the 151-odd separate "subsidiary" conspiracies that supposedly made up the "overarching" conspiracy at issue in this case. Respectfully, the factually bare and implausible claims against Red Oak should be dismissed with prejudice.

**FILED WITH REDACTIONS - PUBLIC VERSION**

## <u>WHAT IS RED OAK SOURCING, LLC?</u>

Red Oak is a joint venture owned equally by Purchasing Defendant Cardinal Health Inc. ("Cardinal") and by non-defendant CVS Health Corporation ("CVS").  Compl. ¶ 89.[1]  Red Oak acts solely as a negotiating agent for Cardinal and CVS "to source and supply both companies' generic pharmaceutical products."  *Id.* ¶ 89; *see also id.* ¶ 357.

Red Oak just negotiates the contracts—it does not actually place any orders, pay any money to manufacturers, or take possession of any drugs.  Red Oak thus is neither a purchaser nor a seller of drugs.  With respect to purchases, Red Oak is not even alleged to purchase any drugs.  With respect to sales, the Complaint does include a boilerplate allegation that "Red Oak marketed and sold generic pharmaceuticals."  *Id.* ¶ 89.  However, this allegation is self-evidently false given that Red Oak does not purchase, and is not alleged to have purchased, any drugs to resell.  For purposes of this motion, however, it suffices that Red Oak is not alleged to have sold drugs to any of the *IRPs*, either directly or indirectly.

Importantly, Red Oak is not alleged to be a mere "alter-ego" of either of its co-owners, CVS or Defendant Cardinal.[2]  Indeed, any such allegation would be frivolous, given that CVS and Cardinal "each own fifty percent" of Red Oak.  Compl. ¶ 89.  Moreover, Red Oak's fifty-percent parent CVS is a pharmacy—a buyer and dispenser of drugs—which, by the logic of the Complaint, only stood to be harmed by drug price increases caused by the alleged "fair share" conspiracy.

---

[1] While it is not material for purposes of this Motion, Red Oak's two corporate parents are technically CVS Pharmacy, Inc. and Cardinal Health 110, LLC.  CVS Pharmacy, Inc. is a wholly-owned subsidiary of CVS Health Corporation, and Cardinal Health 110, LLC is a wholly-owned subsidiary of Cardinal Health, Inc.  *See generally* Red Oak Corp. Disc. Statement (Doc. 59).

[2] In the Complaint, the term "Cardinal" is not defined to include Red Oak, and the term "Red Oak" is not defined to include Cardinal.  By contrast, the Complaint expressly defines the term "Cardinal" to include Defendant The Harvard Drug Group, LLC, which is "a wholly-owned subsidiary of Cardinal."  Compl. ¶¶ 88-89.  *See generally In re Ins. Broker Antitrust Litig.*, 618 F.3d 300, 341 n.44 (3d Cir. 2010) ("As a matter of well-settled common law, a subsidiary is a distinct legal entity and is not liable for the actions of its parent or sister corporations simply by dint of the corporate relationship.").

FILED WITH REDACTIONS - PUBLIC VERSION

**ARGUMENT**

Red Oak respectfully requests that the claims against it be dismissed with prejudice.  First and foremost, the Complaint does not allege that Red Oak participated in any of the 151 "subsidiary" conspiracies that allegedly made up the "overarching" conspiracy; nor does it meaningfully allege that Red Oak even participated in the overarching conspiracy.  Second, there are no facts pled to support a plausible inference that Red Oak participated in any conspiracies.  Finally, because Red Oak does not sell anything to any of the IRPs, the claims against Red Oak under state consumer protection laws and for unjust enrichment should be dismissed.

A.     **There is No Allegation That Red Oak Participated in Any of the 151 "Subsidiary" Conspiracies that Supposedly Made Up the "Overarching" Conspiracy.**

The IRPs allege that twenty-nine generic drug manufacturers and the nine Purchasing Defendants each separately agreed to a nationwide criminal conspiracy to fix prices for 151 generic drugs.  This big, "overarching" conspiracy was allegedly made up of 151 separate "subsidiary" conspiracies.  Compl. ¶ 128.  These 151 subsidiary conspiracies are spelled out in Paragraph 768 and in Appendix A of the Complaint.

Red Oak is alleged to have participated in precisely none of the 151 subsidiary conspiracies.  None.  Red Oak is not named (as either a "Defendant" or a "Co-Conspirator") in *any* of the 151 conspiracies spelled out in Paragraph 768 or in Appendix A.  Nor is Red Oak named (as either a "Defendant" or a "Co-Conspirator") in any of the dozens of other "subsidiary" conspiracies listed in the seven federal claims pled in the alternative to the claim for an overarching conspiracy, *i.e.*, Counts 2(a), 2(b), 2(c), 2(d), 2(e), 2(f), or 2(g).  In fact, Red Oak is not named (as either a "Defendant" or a "Co-Conspirator") in any of the nine "subsidiary" conspiracies listed in Count 2(c) to which Red Oak is ostensibly named as a Co-Defendant.  Nor is Red Oak named (as either a "Defendant" or a "Co-Conspirator") in either of the conspiracies listed in Count 2(d), the

3

caption of which purports to concern Red Oak. *See generally Rigaud v. Garofalo*, Civ. No. 04-1866, 2005 WL 1124269, at *2 (E.D. Pa. May 9, 2005) (dismissing complaint as to a particular defendant where "outside of the heading of the Counts and in the introductory 'Parties' section of the Complaint, Plaintiff makes no substantive mention of [that] Defendant").

The Complaint's failure to allege that Red Oak joined in any of the conspiracies requires Red Oak's dismissal. The Complaint does not even attempt to explain how Red Oak might participate in the overarching conspiracy without also participating in at least one of the subsidiary conspiracies. Rather, the whole idea of the Complaint is that the 151 subsidiary conspiracies were "interdependent" with one another and routinely "involve[ed] multiple drugs and trading of business on one drug for business on another." Compl. ¶ 140. Thus, as there is no allegation that Red Oak participated in any subsidiary conspiracy, it follows that Red Oak also could not have participated in the alleged "overarching" conspiracy. *See Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd*., No. 08-CV-42 JG VVP, 2011 WL 7053807, at *27 (E.D.N.Y. Jan. 4, 2011)*, report and recommendation adopted,* No. 08-CV-00042 JG VVP, 2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012) (rejecting "global conspiracy" claim where "thirteen of the defendants [were] not named as defendants in any of the local conspiracies" underlying the global conspiracy); *Hinds Cty. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 515 (S.D.N.Y. 2009) (dismissing antitrust complaint that "fail[ed] to allege that these Joint Defendants were involved in a single conspiracy or in multiple smaller conspiracies").

Additionally, the Complaint fails to meaningfully allege that Red Oak joined in the "overarching" conspiracy. All the Complaint says is that after the formation of Red Oak in 2014, "[s]ome of the same employees who participated in the overarching conspiracy while at Cardinal accepted new positions at Red Oak and continued to price-fix with their manufacturer

conspirators." Compl. ¶ 357. But this merely asserts a legal conclusion and is not supported by any alleged facts. Accordingly, the Court should not accept this bare legal conclusion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Meanwhile, the Complaint conclusorily asserts that "certain major drug distributors (namely Defendants Cardinal, AmerisourceBergen Drug Corp. ('ABC'), McKesson, Walgreens/WBAD, and Morris & Dickson) understood, agreed with, and did their part to achieve the common goals of the fair share conspiracy." Compl. ¶ 162. But Red Oak is conspicuously left off of this list.[3]

Therefore, Counts 1, 2, 3, 4, and 5—all of which are based in whole or in part on the alleged overarching conspiracy—must be dismissed as against Red Oak. And Counts 2(c), 3, 4,[4] and 5[5]— to the extent they are based on Red Oak's supposed participation in subsidiary conspiracies—must be dismissed as well. *See generally In re Processed Egg Prod. Antitrust Litig.*, 821 F. Supp. 2d 709, 719 (E.D. Pa. 2011) ("a complaint must plausibly suggest that the individual defendant actually joined and participated in the conspiracy").

## B.   No Facts Are Pled to Raise The Inference That Red Oak Joined Any Conspiracy.

Even if the Complaint had alleged that Red Oak participated in the alleged overarching conspiracy or any of the 151 subsidiary conspiracies, the few factual allegations that actually involve Red Oak allow for no plausible inference to support such a claim. The Complaint only

---

[3] The Complaint also includes a conclusory claim that every other Purchasing Defendant "knowingly participated in the fair share conspiracy"—Compl. ¶¶ 182, 202, 214, 240, 282, 344, 352—but it makes no such claim against Red Oak.

[4] Although Count 4 "is brought against all Defendants for their participation in an overarching conspiracy," it is also "[i]n the alternative . . . brought against Defendants-participants in each of the drug-specific sub-agreements alleged above in [Paragraph 768 of] Count 3 and also repeated in Appendix A." Compl. ¶¶ 780-81.

[5] Count 5—which is pled "in the alternative to the other claims in this Complaint"—rests on the premise that the drugs at issue were sold at prices that were inflated by "the unlawful and inequitable acts alleged in this Complaint." *Id.* ¶¶ 790-91. But because the Complaint does not allege any such "unlawful" of "inequitable" acts by Red Oak, Count 5 must be dismissed as to Red Oak as well.

FILED WITH REDACTIONS - PUBLIC VERSION

makes three non-conclusory, relevant claims about Red Oak:

1. That on or about August 3, 2016, ████████████████████████████ ████████████████████████ Compl. ¶ 281 ("Paragraph 281").

2. That in April 2015 and August 2015, at Red Oak's request, a Manufacturer Defendant provided Red Oak with charts showing the market shares of each manufacturer for various generic drugs.  Compl. ¶ 358 ("Paragraph 358").

3. That on July 17, 2014, a Red Oak employee spoke to a representative of Teva ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████ Compl. ¶ 385 ("Paragraph 385").

Reviewing these allegations one-by-one, they do nothing to support any inference that Red Oak purposefully joined or participated in any conspiracy.

### (i)      Paragraph 281

Paragraph 281 does not even purport to suggest that Red Oak participated in any conspiracy.  Rather, Paragraph 281—which appears in a subsection of the Complaint about an unrelated Purchasing Defendant—alleges that Red Oak was the *victim* of an alleged (and not particularly plausible[6]) conspiracy about ████████████████████████ If anything, the implication of Paragraph 281 is that Red Oak *did not* join in any conspiracy, because if Red Oak truly was part of the conspiracy, then there would have been no need for these other Defendants to conspire to fix the prices offered to Red Oak.

### (ii)      Paragraph 358

Paragraph 358 shows Red Oak getting information from one manufacturer about other manufacturers' market shares for various drugs.  This allegation is insufficient to support an inference of conspiracy as a matter of law.  Because this is a "vertical" exchange of information

---

[6] *See* Walgreens Boots Alliance, Inc.'s Memorandum of Law in Support of Motion to Dismiss, at Section I.B.

(from supplier to buyer), as opposed to a "horizontal" exchange (between competitors), it "does not plausibly support a claim of horizontal conspiracy." *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 333 (3rd Cir. 2010); *see also id.* at 329-30 ("[A] manufacturer's practice of informing each of its distributors of the identities of its other distributors—as well as the prices they paid and the volume of product they received—would not plausibly imply a horizontal agreement among the distributors."); *see generally* Joint Memorandum at Sections IV & V.B.2.b.ii(c).

It is also important to consider Paragraph 358 in the context of the IRPs' overall case. Rather than alleging that the Manufacturing Defendants engaged in a classic, outright price-fixing conspiracy (*e.g.*, each manufacturer will charge $10 per pill), the IRPs allege that the Manufacturing Defendants engaged in a more subtle, "fair share" conspiracy (*e.g.*, each manufacturer will get a 33% market share).  The Manufacturing Defendants allegedly used this "fair share" mechanism "to short-circuit the market" and charge supracompetitive prices.  The problem for the IRPs is that, from the perspective of a Purchasing Defendant like Red Oak, having several major suppliers with similar market shares tends to foster price competition and reduce the risk of supply interruption from any one supplier.  In fact, the Complaint itself alleges that in a truly competitive market for generic drugs, "each manufacturer would 'naturally' end up with roughly its fair share, except at much lower prices (manufacturers would undercut one another until prices were close to cost)."  Compl. ¶ 139.  Accordingly, the entire notion of the "fair share" conspiracy does not make sense with respect to the Purchasing Defendants, because a market structure where every supplier has a "fair share" is exactly what the Purchasing Defendants would hope to achieve in a competitive market.  In this light, the allegation that Red Oak asked a manufacturer for market share information shows the Red Oak was seeking to promote

competition among the Manufacturer Defendants, not subvert it.

**(iii)** **Paragraph 385**

Finally, Paragraph 385 concerns a criminal conspiracy between Teva and Sandoz that is based on the direct account of a Sandoz Cooperating Witness.  Sandoz has already signed a Deferred Prosecution Agreement with the Department of Justice admitting the existence of this conspiracy with Teva.  That Deferred Prosecution Agreement says nothing about Red Oak or any other Purchasing Defendant.[7]   Compl. ¶¶ 252 n.21, 379-82, 384, 390.   The timeline for the conspiracy is that between July 1 and July 9, 2014, a representative from Teva communicated with the Sandoz Cooperating Witness thirteen times by telephone, and once by email, about "Sandoz's launch plans and how to divide up the market for Tobramycin."  Compl. ¶¶ 379-80, 384.  During one of these calls, on July 7th, Teva "agreed to concede the Cardinal business [for Tobramycin] to Sandoz."  *Id.* ¶¶ 380-81.  The allegation against Red Oak is that on July 17th, an employee of Red Oak[8] told his contact at Teva ███████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████  *Id.* ¶ 385.

These allegations do not support a plausible inference that Red Oak joined in the conspiracy between Teva and Sandoz.  For one, Red Oak's involvement in this alleged conspiracy does not make any sense.  Why would Teva and Sandoz have conspired with each other at all about the Cardinal business—with thirteen phone calls and a confirmatory email—if Cardinal's sourcing agent—Red Oak—was already part of the plan?  *Cf. Valspar Corp. v. E.I. du Pont de Nemours &*

---

[7] Instead, Sandoz's Deferred Prosecution Agreement—which is quoted in the Complaint—only says that "Sandoz conspired to suppress and eliminate competition by agreeing to allocate customers and rig bids for, and/or stabilize, maintain, and fix prices of, certain generic drugs, including tobramycin inhalation solution, with **Teva**."  Compl. ¶ 390 (emphasis added and alteration omitted).

[8] The Complaint describes this individual as an employee of "Red Oak / Cardinal."  Compl. ¶ 385.

**FILED WITH REDACTIONS - PUBLIC VERSION**

*Co.*, 873 F.3d 185, 199 (3d Cir. 2017) ("[C]onspirators would have no need to ask consultants about the specifics of their own conspiracy.")

More to the point, Paragraph 385 fails to support a claim against Red Oak as a matter of law, because there is no allegation of ***horizontality***—that is, there are no facts to suggest that Red Oak made its alleged comments in furtherance of any agreement between Teva and Sandoz (or Akorn).  *See, e.g.*, *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 257 (3d Cir. 2010) ("The Plaintiffs have failed to allege any facts plausibly suggesting a unity of purpose, a common design and understanding, or a meeting of the minds between and among [the manufacturer] and all of the Dealers [the spokes]."); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 330 ("It is true that *if* a horizontal conspiracy . . . existed, the exchange of information alleged could conceivably serve the 'policing' function plaintiffs describe.  But it does not follow that this disclosure of information plausibly implies such a conspiracy; it is at least equally consistent with unconcerted action.").  Because there is no allegation that Red Oak ever communicated with Sandoz about the conspiracy, there is no basis for inferring that Red Oak even knew about the conspiracy.[9]  Respectfully, Paragraph 385 does not support a claim against Red Oak.  *See generally* Joint Memorandum at Sections V.B.2.b.ii(d) & V.C.

  **(iv)**  **There is No Allegation That Red Oak Joined in The Overarching Conspiracy.**

The three substantive allegations that involve Red Oak do not implicate it in any conspiracy.  For sake of argument, however, even if one of these allegations did implicate Red Oak in a narrow conspiracy, there plainly have been no allegations to connect Red Oak to the

---

[9] Paragraph 385 rules out the possibility that Teva might have informed Red Oak about the conspiracy, because it alleges that Red Oak's purpose for urging Teva to concede the Cardinal business was that Red Oak "was concerned that the manufacturers' allocation agreement was not being executed quickly enough."  Compl. ¶ 385.  Therefore, the allegation is that Red Oak was pressuring Teva to abide by its own conspiracy.  But if Teva was not abiding by the conspiracy, then Teva would not have divulged the conspiracy to Red Oak.

FILED WITH REDACTIONS - PUBLIC VERSION

alleged "overarching" conspiracy.  Therefore, at a minimum, each of Counts 1, 2, 3, 4, and 5 must be dismissed against Red Oak insofar as they are based on claims that Red Oak participated in the overarching conspiracy.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 341 ("To the extent defendants object that the allegations of bid rigging within the Marsh-centered commercial conspiracy cannot support claims of horizontal agreements within other alleged broker-centered conspiracies, their point is well-taken.").

### C.  Separately, Counts 4 and 5 Should Be Dismissed, Because the IRPs Never Bought Anything from Red Oak.

Finally, the Complaint not only fails to allege that Red Oak participated in any conspiracies, it also fails to allege that any IRPs actually bought any drugs from Red Oak.  There is no allegation that any of the named IRPs ever bought any drugs (or anything else) from Red Oak, either directly or indirectly.  *See* Compl. ¶¶ 9-14.  Nor is there any allegation that any **unnamed** pharmacies or hospitals ever bought any drugs (or anything else) from Red Oak, either directly or indirectly.[10]  Simply put, there is no allegation that Red Oak ever sold anything to any IRPs.  And, as a matter of fact, Red Oak can represent that it has never sold any drugs to anybody— not even to CVS or Cardinal.  That is just not Red Oak's business.  Rather, Red Oak's business is serving as an agent for the sourcing of generic drugs by CVS, Cardinal, and certain of their subsidiaries.  **Those** are the entities that actually purchase drugs for resale to the market.[11]

This omission has two important results.  First, Count 4 for violation of various state consumer protection statutes seeks redress for "deceiv[ing] Plaintiffs and/or class members in each

---

[10] Tellingly, while the Complaint specifically alleges that many of the other Purchasing Defendants "distribute[ ] generic drugs throughout the country, including to one or more Plaintiffs," no such allegation is made against Red Oak.  *Compare* Compl. ¶¶ 82, 86, 90, 91 *with id.* ¶ 89.

[11] To be clear:  the Complaint makes no allegations that Red Oak makes payment to any drug manufacturers; that any drugs go through Red Oak's hands; or that Red Oak has ever sold (or resold) drugs to any IRPs.

FILED WITH REDACTIONS - PUBLIC VERSION

state into believing that the Drugs at Issue were competitively priced . . . by not disclosing the nature of their overarching and individual agreements in restraint of trade." Compl. ¶ 785. But because there is no allegation that Red Oak ever made any statements to (or had any other interactions with) any IRPs,[12] Count 4 fails to state a claim against Red Oak.

Second, Count 5 for unjust enrichment—pled "in the alternative to the other claims"—seeks equitable relief to the extent that "Plaintiffs and the State Damages Class have conferred upon Defendants an economic benefit in the nature of profits resulting from unlawful overcharges." Compl. ¶ 793. But because no IRPs, either named or unnamed, have either directly or indirectly bought anything from Red Oak, no such "economic benefit" has been conferred upon Red Oak. Thus, Count 5 against Red Oak should be dismissed. *See, e.g.*, *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 447 (3d Cir. 2000) (affirming dismissal of unjust enrichment claim because "the Hospitals' provision of medical services did not 'benefit' the Tobacco Companies"); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447, 479 (S.D.N.Y. 2014) ("Where plaintiff and defendant simply had no dealings with each other, their relationship is too attenuated to support an unjust enrichment claim." (quotation omitted)). *See generally* Joint Memorandum at Section V.E.

## PRAYER FOR RELIEF

Red Oak respectfully requests that the claims against it be dismissed with prejudice.

Dated:  July 15, 2020

                                                  Respectfully submitted,

                                                  *s/ John F. Zabriskie*
                                                  John F. Zabriskie (admitted *pro hac vice*)

---

[12] As described *supra*, the Complaint does include a boilerplate, venue-related allegation that "Red Oak marketed and sold generic pharmaceuticals." Compl. ¶ 89. But there is no allegation that Red Oak ever sold any pharmaceuticals to any IRPs.

**FILED WITH REDACTIONS - PUBLIC VERSION**

FOLEY & LARDNER LLP
321 N. Clark St., Suite 3000
Chicago, IL 60654-4762
Phone: 312.832.4500
Fax: 312.832.4700
jzabriskie@foley.com

Benjamin R. Dryden (admitted *pro hac vice*)
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
Phone: 202.672.5300
Fax: 202.672.5399
*bdryden@foley.com*

*Attorneys for Defendant Red Oak Sourcing, LLC*

**FILED WITH REDACTIONS - PUBLIC VERSION**

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2020, the undersigned caused the foregoing RED OAK

SOURCING, LLC'S INDIVIDUAL MEMORANDUM OF LAW IN SUPPORT OF

PURCHASING DEFENDANTS' JOINT MOTION TO DISMISS THE INDIRECT RESELLER

PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT to be filed via the Court's CM/ECF

system, which sent notice to all counsel of record in this action.

*s/ John F. Zabriskie*
John F. Zabriskie
*Counsel for Defendant Red Oak Sourcing, LLC*

**FILED WITH REDACTIONS - PUBLIC VERSION**