**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL No. 2724**<br>**16-MD-2724**<br><br>**CIVIL ACTION NO.**<br><br>**19-cv-6044** |
| **THIS DOCUMENT RELATES TO:**<br><br>**RELIABLE PHARMACY, et al.,**<br><br>*Plaintiffs*<br><br>**v.**<br><br>**ACTAVIS HOLDCO US, INC., et al.,**<br><br>*Defendants* | **HIGHLY CONFIDENTIAL – FILED UNDER SEAL PURSUANT TO PARAGRAPH 1.5 OF PROTECTIVE ORDER**<br><br>**ORAL ARGUMENT REQUESTED** |

**WALGREENS BOOTS ALLIANCE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

**FILED WITH REDACTIONS – PUBLIC VERSION**

## **TABLE OF CONTENTS**

STATEMENT OF ADDITIONAL RELEVANT FACTS ............................................................. 2

ARGUMENT ............................................................................................................................. 5

   I.    PLAINTIFFS FAIL TO ALLEGE WALGREENS PARTICIPATED IN A
COGNIZABLE CONSPIRACY ....................................................................................... 5

     A.   As a Purchaser of Generic Drugs, Walgreens Had No Motive to Participate in a
Conspiracy to Increase the Prices of Generic Drugs, and None is Alleged ............................ 8

     B.   Walgreens' Alleged Conduct Was Consistent with Other, Equally, or More Plausible
Explanations ................................................................................................................. 9

   II.   EACH OF PLAINTIFFS' CLAIMS AGAINST WALGREENS SHOULD BE
DISMISSED .................................................................................................................. 16

     A.   All of Plaintiffs' Claims Against Walgreens Are Based on the Same Faulty Allegations
and Should Be Dismissed for the Same Reasons .................................................................. 16

     B.   Plaintiffs' Unjust Enrichment Claim Should Be Dismissed for the Additional Reason
that Walgreens Received no Benefit from Dispensers ........................................................ 16

CONCLUSION ......................................................................................................................... 17

**FILED WITH REDACTIONS – PUBLIC VERSION**

# <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)........................................................................................................5, 10

*Bell Atl. Corp. v. Twombly,*
550, U.S. 544 (2007).....................................................................................................6, 8, 11

*Boring v. Google Inc.,*
362 Fed. App'x 273 (3d Cir. 2010)........................................................................................17

*Burtch v. Milberg Factors, Inc.,*
662 F.3d 212 (3d Cir. 2011)..........................................................................................6-7, 9-10

*Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.,*
637 F.2d 105 (3d Cir. 1980)........................................................................................6

*In re Baby Foods Antitrust Litig.,*
166 F.3d 112 (3d Cir. 1999)........................................................................................11, 15

*In re Generic Pharm. Pricing Antitrust Litig.,*
386 F. Supp. 3d 477 (E.D. Pa. 2019)........................................................................6

*In re Ins. Brokerage Antitrust Litig.,*
618 F.3d 300 (3d Cir. 2010)........................................................................ <u>passim</u>

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.,*
475 U.S. 574 (1986)........................................................................................8

*Monsanto Co. v. Spray-Rite Service Corp.,*
465 U.S. 752 (1984)........................................................................................6, 11, 14

*Rossi v. Standard Roofing, Inc.,*
156 F.3d 452 (3d Cir. 1998)........................................................................7, 11

*Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.,*
181 F.3d 410 (3d Cir. 1999)........................................................................4

*Sovereign Bank v. BJ's Wholesale Club, Inc.,*
533 F.3d 162 (3d Cir. 2008)........................................................................17

FILED WITH REDACTIONS – PUBLIC VERSION

*United States v. United States Gypsum Co.*,
   438 U.S. 422 (1978).................................................................................................7

*Valspar Corp. v. E.I. Du Pont De Nemours and Co.*,
   873 F.3d 185 (3d Cir. 2017)...................................................................................15

**Docketed Cases**

*Burlington Drug Co., Inc. v. Pfizer Inc.*,
   No. 3:12-cv-02389 (D.N.J.)......................................................................................4

*In Re Aggrenox Antitrust Litig.*,
   No. 3:14-md-02516 (D. Conn.).................................................................................4

*In Re Glumetza Antitrust Litig.*,
   No. 3:19-cv-07843 (N.D. Cal.)..................................................................................3

*In re Lidoderm Antitrust Litig.*,
   No. 3:14-md-02521 (N.D. Cal.).................................................................................4

*In re Loestrin 24 Antitrust Litig.*,
   No. 1:13-md-02472 (D.R.I.)......................................................................................4

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
   No. 1:14-md-02503 (D. Mass.).................................................................................4

*In Re Zetia (Ezetimibe) Antitrust Litig.*,
   No. 2:18-md-02836 (E.D. Va.)..................................................................................3

*Marion Diagnostic Ctr. v. McKesson Corp.*,
   No. 18-4137 (E.D. Pa.) ...............................................................................6-8, 12

*Walgreen Co. v. Abbott Laboratories*,
   No. 2:15-cv-01183 (E.D. Pa.)...................................................................................4

*Walgreen Co. v. Astrazeneca AB*,
   No. 1:13-cv-10337 (D. Mass.)..................................................................................4

*Walgreen Co. v. Astrazeneca Pharm. L.P.*,
   No. 1:19-cv-10049 (S.D.N.Y.)...................................................................................3

*Walgreen Co. v. Bausch Health Cos. Inc.*,
   No. 3:19-cv-07843 (N.D. Cal.)..................................................................................3

**FILED WITH REDACTIONS – PUBLIC VERSION**

*Walgreen Co. v. Boehringer Ingelheim Pharma GMBH & Co. KG,*
    No. 1:15-cv-00604 (M.D. Pa.)................................................................................4

*Walgreen Co. v. Boehringer Ingelheim Pharma GMBH & Co. KG,*
    No. 3:15-cv-0559 (D. Conn.)................................................................................4

*Walgreen Co. v. Cephalon Inc.,*
    No. 2:09-cv-03956 (E.D. Pa.)................................................................................4

*Walgreen Co. v. Endo Pharm. Inc..,*
    No. 3:15-cv-01032 (N.D. Cal.)................................................................................4

*Walgreen Co. v. King Pharm., Inc.,*
    No. 1:12-cv-00203 (E.D. Tenn.)................................................................................4

*Walgreen Co. v. Merck & Co., Inc.,*
    No. 2:18-cv-00266 (E.D. Va.)................................................................................4

*Walgreen Co. v. Novartis Pharm. Corp.,*
    No. 1:18-cv-09861 (S.D.N.Y.)................................................................................4

*Walgreen Co v. Pfizer Inc.,*
    No. 2:11-cv-02004 (D.N.J.)................................................................................4

*Walgreen Co. v. Pfizer, Inc.,*
    No. 3:12-cv-04115 (D.N.J.)................................................................................4

*Walgreen Co. v. Unimed Pharm., LLC,*
    No. 1:09-cv-01240 (M.D. Pa.)................................................................................4

*Walgreen Co. v. Unimed Pharm., LLC,*
    No. 1:09-cv-03019 (N.D. Ga.)................................................................................4

*Walgreen Co. v. Warner Chilcott Public Ltd. Co.,*
    No. 1:14-cv-00102 (D.R.I.)................................................................................4

*Walgreen Co. v. Warner Chilcott Public Ltd. Company,*
    No. 2:13-cv-00658 (E.D. Pa.)................................................................................4

*Walgreen Co. v. Wyeth, Inc.,*
    No. 3:11-cv-06985 (D.N.J)................................................................................4

FILED WITH REDACTIONS – PUBLIC VERSION

Defendant Walgreens[1] hereby submits its separate memorandum in support of the motion to dismiss the Amended December 2019 Complaint (the "Complaint").[2]

## INTRODUCTION

Walgreens does not belong in this case as a defendant. Walgreens was a victim of, not a co-conspirator in, the alleged conspiracy. As the Complaint alleges, Walgreens operates a chain of pharmacies. It is no different in that respect than at least five of the six Plaintiffs, which are also pharmacies (the other being a hospital, which includes a pharmacy (Compl. ¶ 12)). Like Plaintiffs, Walgreens purchases drugs to provide to patients, not to distribute them as a wholesaler to pharmacies and hospitals. Plaintiffs do not allege any way by which Walgreens would have or could have benefited from higher generic drug prices, and any such allegations would make no economic sense.

Lacking any allegations of motive, Plaintiffs seek to implicate Walgreens in—and hold Walgreens legally responsible for—a vast conspiracy among manufacturers involving 151 generic drugs. Even though Walgreens purchases all of those drugs—frequently from the manufacturers that are Defendants in this case—Plaintiffs' only allegations to support Walgreens' participation in this conspiracy are a few stray communications that Walgreens had with a few manufacturers regarding just thirteen of those drugs. But notwithstanding Plaintiffs' unsupported and highly implausible interpretation of these communications, they merely reflect

---

[1] "Walgreens" as used here refers to Defendant Walgreens Boots Alliance, Inc. Walgreens Boots Alliance Development GMBH ("WBAD") is also a named Defendant and is a subsidiary of Walgreens, but has not been served. For purposes of this memorandum only, Walgreens makes no distinction between those two entities, and for the same reasons the claims against Walgreens Boots Alliance, Inc. should be dismissed, the claims against WBAD should also be dismissed.

[2] In addition to submitting this memorandum, Walgreens fully joins, adopts, and incorporates by reference the joint memorandum of law in support of Defendants' joint motion to dismiss.

FILED WITH REDACTIONS – PUBLIC VERSION

Walgreens' need to acquire supply and negotiate to secure low prices and steady supply for generic drugs, not the sort of conscious commitment to an unlawful scheme that is required to allege participation in a conspiracy.

Plaintiffs' claims against Walgreens fail as a matter of law and should be dismissed.

## STATEMENT OF ADDITIONAL RELEVANT FACTS

Like the Plaintiffs, Walgreens operates pharmacies. According to the Complaint, Walgreens is the "largest retail pharmacy . . . currently operating in the U.S. and Europe." (Compl. ¶ 92.) Since 2013, Walgreens has purchased generic drugs through its so-called "purchasing arm," WBAD. (Compl. ¶ 93.)[3]

There are no allegations in the Complaint that Walgreens would have benefitted from the higher generic drug prices that Plaintiffs allege resulted from the posited conspiracy. To the contrary, Plaintiffs specifically allege the opposite, that "pharmacies and hospitals . . . purchased and later dispensed" the generic drugs at issue and suffered harm because they "paid illegally inflated prices for these drugs." (Compl. ¶ 2.) In the section of the Complaint with the heading "Distributor Defendants often benefit from higher market-wide drug prices" (Compl. ¶¶ 173-81), there are no allegations at all pertaining to Walgreens, which in any event is not a "distributor" or "drug wholesaler" (Compl. ¶ 162). Plaintiffs also allege that, in one instance at least, Sandoz directed its "national account executive assigned to Walgreens . . . to decline to bid and to lie about the reason for doing so." (Compl. ¶ 619 ("I recommend you blame supply.").)

Even though, as the "largest retail pharmacy" in the United States and Europe, Walgreens purchases vast quantities of generic drugs from—and has had many thousands of

---

[3] WBAD pools the purchasing volume of its members to negotiate lower prices from generic drug manufacturers.

**FILED WITH REDACTIONS – PUBLIC VERSION**

communications with—each of the manufacturer defendants, Plaintiffs only allege communications involving Walgreens relating to thirteen drugs.  None of these communications mentions the 151-drug conspiracy that Plaintiffs' posit.  Rather, they are a hodgepodge of instances where one manufacturer or another complained about one of its competitors or stated goals of achieving a certain market share.  There are a few alleged instances where a manufacturer asked Walgreens to try to ascertain another manufacturers' plans as to a particular drug.  There are also one or two instances, involving discrete drugs in particular situations, where Plaintiffs allege that Walgreens carried messages between manufacturers as part of Walgreens' own negotiations with the manufacturers for a few specific drugs, but these communications do not plausibly show Walgreens' participation in any alleged conspiracy.  Rather, they show Walgreens negotiating for low prices.  And, of course, whatever reduction in prices that Walgreens was able to achieve may have been dwarfed by the higher prices presumably achieved by the allegedly conspiring manufacturers.

Meanwhile, consistent with its incentives to obtain lower—not higher—generic drug prices, Walgreens has repeatedly commenced antitrust litigation against the very manufacturers with which Plaintiffs assert it was conspiring to raise prices.  Since 2009 (in other words, throughout the time the alleged conspiracy was ongoing), Walgreens litigated 25 separate antitrust actions against the same generic manufacturers that are defendants in this case for alleged misconduct in preventing other generic manufacturers from entering various markets and thus illegally maintaining inflated prices. [4]  The drugs at issue in some of those cases were

---

[4] These actions are: *In Re Glumetza Antitrust Litigation*, No. 3:19-cv-07843 (N.D. Cal.); *Walgreen Co. v. Bausch Health Cos. Inc.*, No. 3:19-cv-07843 (N.D. Cal.); *Walgreen Co. v. Astrazeneca Pharmaceuticals L.P.*, No. 1:19-cv-10049 (S.D.N.Y.); *In Re Zetia (Ezetimibe) Antitrust Litigation*, No. 2:18-md-02836 (E.D. Va.); *Walgreen Co. v. Novartis Pharmaceuticals*

FILED WITH REDACTIONS – PUBLIC VERSION

among the drugs at issue in this case.  Plaintiffs do not, because they cannot, explain in the

Complaint how Walgreens filing these actions against its alleged co-conspirators in order to

induce lower prices is consistent with their allegation that Walgreens conspired with the same

parties to raise prices (even as to some of the same drugs).  Nor can they explain why any of the

manufacturer Defendants would be willing to let Walgreens know about an antitrust conspiracy,

much less invite it to join.

Plaintiffs assert two substantive claims against Walgreens, Count 2 and Count 2(g).  In

Count 2, Plaintiffs assert that Walgreens was a co-conspirator as to the 151 drugs listed in

Appendix A to the Complaint.  (Compl. ¶ 758.)  In Count 2(g), Plaintiffs assert that Walgreens

---

*Corp.*, No. 1:18-cv-09861 (S.D.N.Y.); *Walgreen Co. v. Merck & Co., Inc.*, No. 2:18-cv-00266 (E.D. Va.); *In re Loestrin 24 Antitrust Litigation*, No. 1:13-md-02472 (D.R.I.); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litigation*, No. 1:14-md-02503 (D. Mass.); *In Re Aggrenox Antitrust Litigation*, No. 3:14-md-02516 (D. Conn.); *In re Lidoderm Antitrust Litigation*, No. 3:14-md-02521 (N.D. Cal.); *Walgreen Co. v. Boehringer Ingelheim Pharma GMBH & Co. KG*, No. 1:15-cv-00604 (M.D. Pa.); *Walgreen Co. v. Boehringer Ingelheim Pharma GMBH & Co. KG*, No. 3:15-cv-0559 (D. Conn.); *Walgreen Co. v. Abbott Laboratories*, No. 2:15-cv-01183 (E.D. Pa.); *Walgreen Co. v. Endo Pharmaceuticals Inc..*, No. 3:15-cv-01032 (N.D. Cal.); *Walgreen Co. v. Warner Chilcott Public Ltd. Co.*, No. 1:14-cv-00102 (D.R.I.); *Burlington Drug Co., Inc. v. Pfizer Inc.*, No. 3:12-cv-02389 (D.N.J.); *Walgreen Co. v. Astrazeneca AB*, No. 1:13-cv-10337 (D. Mass.); *Walgreen Co. v. Warner Chilcott Public Ltd. Company*, No. 2:13-cv-00658 (E.D. Pa.); *Walgreen Co. v. Pfizer, Inc.*, No. 3:12-cv-04115 (D.N.J.); *Walgreen Co. v. King Pharmaceuticals, Inc.*, No. 1:12-cv-00203 (E.D. Tenn.); *Walgreen Co. v. Wyeth, Inc.*, No. 3:11-cv-06985 (D.N.J.); *Walgreen Co v. Pfizer Inc.*, No. 2:11-cv-02004 (D.N.J.); *Walgreen Co. v. Cephalon Inc.*, No. 2:09-cv-03956 (E.D. Pa.); *Walgreen Co. v. Unimed Pharmaceuticals, LLC*, No. 1:09-cv-03019 (N.D. Ga.); *Walgreen Co. v. Unimed Pharmaceuticals, LLC*, No. 1:09-cv-01240 (M.D. Pa.). The Court properly should take judicial notice of these actions. *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999) ("To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint."). Walgreens is not requesting that the Court accept the truth of the allegations made in these complaints, but it is appropriate for the Court to take judicial notice of the *fact* that they were filed by Walgreens against the manufacturer defendants. *See Southern Cross Overseas Agencies*, 181 F.3d at 427, n.7.

participated in "individual agreements in restraint of trade" as to just thirteen drugs, which in general are the drugs as to which the Complaint includes actual allegations concerning Walgreens' communications with a manufacturer.  Plaintiffs apparently seek to go forward with Count 2(g) if "Count 2 is not sustained."  (Compl. ¶ 766.)  The other counts (Counts 1, 3, 4, and 5) piggyback off of Count 2 and seek injunctive relief and recovery under state antitrust, consumer protection, and unjust enrichment law, on the same theories.  (Compl. ¶¶ 748-57, 767-804.)

Plaintiffs seek to represent a class of "[a]ll dispensers of drugs in the United States that purchased one or more of the 151 generic Drugs at Issue . . . from January 1, 2010 through the present."  (Compl. ¶ 738.)  Although Walgreens, like Plaintiffs, is a dispenser of drugs, and thus would fall within this class definition, Plaintiffs have deliberately carved it out for the unexplained reason that it is "owned or operated by [a] publicly traded compan[y]" (*id.*).[5]

## ARGUMENT

## I.  PLAINTIFFS FAIL TO ALLEGE WALGREENS PARTICIPATED IN A COGNIZABLE CONSPIRACY

Before the massive case that Plaintiffs posit against Walgreens can go to discovery, the Court must determine whether the allegations, if proven, could establish a claim against Walgreens.  Only non-conclusory allegations and plausible inferences from such allegations are considered in making this determination.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are disregarded in determining whether "the well-pleaded facts" state the

---

[5] Despite being arbitrarily gerrymandered out of the proposed class, Walgreens is, through its contractual assignment of claims from Amerisource-Bergen Drug Company (*see* Compl. ¶ 216), one of the largest absent class members in the Direct Purchaser Plaintiffs' class in this MDL.

FILED WITH REDACTIONS – PUBLIC VERSION

required "plausible claim for relief").  "To determine the sufficiency of a complaint under *Twombly* and *Iqbal*, [a court] must take the following three steps:  First, the court must take note of the elements a plaintiff must plead to state a claim.  Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (internal quotations marks omitted).  Moreover, in assessing the plausibility of a conspiracy, the Court must interpret the allegations before it "in light of common economic experience."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

As the Court properly held in dismissing the similar claims against McKesson, to go forward the Complaint must allege facts giving rise to the plausible inference that Walgreens and the allegedly conspiring manufacturer Defendants had "a unity of purpose or a common design and understanding or a meeting of minds in a conscious commitment to a common scheme . . . ." *In re Generic Pharm. Pricing Antitrust Litig.,* 386 F. Supp. 3d 477, 482 (E.D. Pa. 2019) (hereinafter *McKesson*) (dismissing complaint in *Marion Diagnostic Ctr. v. McKesson Corp.,* No. 18-4137 (E.D. Pa.), at 5) (quoting *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 315 (3d Cir. 2010) (citations and internal quotation marks omitted)); *see also Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 764 (1984) (requiring "conscious commitment to a common scheme to achieve an unlawful objective") (quoting *Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*, 637 F.2d 105 (3d Cir. 1980)).  "[T]he issue is whether the pleading delineates to some sufficiently specific degree that a defendant purposefully joined and participated in the

conspiracy." *McKesson*, at 5-6. "Unilateral action, regardless of motivation, is not a violation of Section 1." *Burtch*, at 222.

The allegations must also be particular as to the defendant at issue. *See United States v. United States Gypsum Co.*, 438 U.S. 422, 463 (1978) ("Liability [can] only be predicated on the knowing involvement of each defendant, considered individually, in the conspiracy charged."). This is especially critical in cases like this one, where the various defendants operate in different aspects of the industry, with manufacturers, distributors, purchasing organizations, and pharmacies. *See, e.g.*, *Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 479 (3d Cir. 1998) (affirming dismissal of claims against one distributor because the plaintiff had failed to provide "direct or circumstantial evidence that tends to exclude the possibility that [the distributor] acted independently rather than joining the conspiracy").

While Plaintiffs can try to plead claims against Walgreens circumstantially, "to enforce the Sherman Act's requirement of an agreement, the Supreme Court has required that 'a § 1 plaintiff's offer of conspiracy evidence must tend to rule out that possibility that the defendants were acting independently . . . .'" *Ins. Brokerage*, 618 F.3d at 321 (quoting *Twombly*, 550 U.S. at 554). The Third Circuit has identified three such potential factors, supported by non-conclusory allegations, that could potentially meet this requirement: (1) "that the defendant had a motive to enter into a . . . conspiracy," (2) "that the defendant acted contrary to its interests," or (3) "implying a traditional conspiracy." *Ins. Brokerage*, 618 F.3d at 322.[6]

---

[6] A conspiracy can also be pled by direct evidence of a conspiracy, which is "evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted." *Burtch*, 662 F.3d at 225 (quoting *Ins. Brokerage*, 618 F.3d at 324 n.23). None of the communications that Plaintiffs allege in any way directly confirm Plaintiffs' alleged over-arching conspiracy or, for that matter, conspiracies involving individual drugs. *See, e.g.*, *Burtch*,

**FILED WITH REDACTIONS – PUBLIC VERSION**

Plaintiffs' allegations fall far short of those requirements.  "A Section 1 claim will not be 'considered adequately pled because of the bare possibility that discovery *might* unearth direct evidence of an agreement.'"  *McKesson*, at 5 (quoting *Ins. Brokerage*, 618 F.3d at 324 (emphasis added)).

> **A.**     **As a Purchaser of Generic Drugs, Walgreens Had No Motive to Participate in a Conspiracy to Increase the Prices of Generic Drugs, and None is Alleged**

Perhaps most importantly, Plaintiffs do not even attempt to allege a motive for Walgreens to participate in the wide-ranging, over-arching conspiracy to increase the prices that pharmacies, *including Walgreens*, pay for generic drugs.  As the Supreme Court held in *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 596-97 (1986), "if petitioners had no rational economic motive to conspire, and if their conduct is consistent with other, equally plausible explanations, the conduct does not give rise to an inference of conspiracy."  *See also Twombly*, 550 U.S. at 547 (holding that sufficiency of conspiracy allegations "turns on the suggestions raised by the [defendants'] conduct when viewed in light of common economic experience.").

Walgreens had no motive to enter into the conspiracy Plaintiffs posit because it is a purchaser of drugs.  According to the most basic premise of the Complaint, it does not benefit from higher prices, which directly and negatively impact its own bottom line.  Plaintiffs do not allege otherwise.  In the section of the Complaint devoted to allegations that "Distributor Defendants often benefit from higher market-wide drug prices," there are no allegations about Walgreens, which in fact is a pharmacy, not a distributor at all, benefitting from higher prices. (*See* Compl. ¶¶ 173-80.)  Indeed, the only allegations about how pharmacies like Walgreens

---

at 226 (concluding that allegations of 27 specific conversations where the parties exchange information about customers' credit worthiness was not direct evidence of conspiracy).

**FILED WITH REDACTIONS – PUBLIC VERSION**

were affected by the alleged conspiracy are that pharmacies "paid illegally inflated prices for these drugs," which suggests Walgreens had the *opposite* incentive.  (Compl. ¶ 2.)

This fact is illustrated by the allegations of the Complaint itself, for example, the allegations concerning Celecoxib.  (*See* Compl. ¶¶ 266-273.)  While Walgreens leveraged previous pricing to negotiate for lower prices on Celecoxib, Teva and Actavis engaged in numerous direct phone conversations.  (Compl. ¶ 273.)  To the extent these communications between Teva and Actavis had the effect of raising the price of Celecoxib (as Plaintiffs allege), that directly harmed Walgreens by limiting the competitive bids it received.  (*See* Compl. ¶ 273.)

Because higher drug prices hurt Walgreens, Walgreens had "no rational economic motive to conspire," and the claims against it should be dismissed.  *See also Burch*, 662 F.3d at 229 (affirming dismissal of conspiracy claim because alleged conspiracy would have "reduce[d] the demand for" the alleged conspirator's services and the alleged conspirator therefore had no "self-interested motivation" to participate); *Ins. Brokerage*, 618 F.3d at 322 n.20 (citations omitted) ("[M]ost courts rely on the absence of motivation or offense to self-interest to preclude a conspiracy inference from ambiguous evidence or parallelism.").

## B.   Walgreens' Alleged Conduct Was Consistent with Other, Equally, or More Plausible Explanations

Without any allegations of motive, Plaintiffs are left to their allegations that Walgreens was involved in communications with its suppliers that somehow represent its joining their conspiracy, which sought to victimize Walgreens and Plaintiffs.  These allegations are particularly unavailing given Plaintiffs' other allegations, including that Sandoz felt compelled to lie to Walgreens about the reasons it was not bidding for Walgreens' business.  (*See* Compl. ¶ 619.)  If Walgreens was part of the over-arching conspiracy that Plaintiffs posit (or any conspiracy), the key alleged conspirators like Sandoz would have no need to lie to Walgreens.

9

In any event, the communications that Plaintiffs cite—limited as they are to 13 of the 151 drugs at issue in the case—neither suggest Walgreens acted against its interests nor plausibly imply a "traditional conspiracy" involving Walgreens.  *See, e.g.*, *Ins. Brokerage*, 618 F.3d at 322 (describing such evidence as "proof that the defendants got together and exchanged assurances of common action or otherwise adopted a common plan"); *see also Burtch*, 662 F.3d at 230 (affirming dismissal of complaint where defendants had "shared what the individual companies were planning on doing, . . . but [did] not allege assurances of common action between the defendants") (internal quotation marks omitted).  Indeed, the communications involve only a handful of drugs, and in each instance, Walgreens was in the process of attempting to obtain low prices and stable supply, which is a purely procompetitive activity.  (*See also* Compl. ¶ 172 (conceding that a buyer "must necessarily discuss its own purchases with its suppliers, the manufacturers").)

This Court should not be sidetracked by Plaintiffs' efforts to cast these communications in a sinister light.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that only non-conclusory allegations and plausible inferences from such allegations are considered in assessing motion to dismiss).  For example, Plaintiffs sensationally accuse Walgreens of "coordinat[ing] market allocation schemes . . . as recently as August 2016" with respect to the drug Omeprazole-sodium bicarbonate.  (Compl. ¶ 279.)  But the factual allegations relating to the assertion do not support that conclusory assertion at all.  Rather, the allegations are that a Dr. Reddy's representative sought business from Walgreens and then speculated to his colleagues ███  ███████████████████████████████████████████████████  ███████████████████████████████  (Compl. ¶ 281.)  Of course, negotiating with alternative suppliers is the essence of procompetitive behavior, and internal speculation at a

manufacturer-supplier does not amount to evidence of a customer joining the conspiracy against
its own interests.  Nevertheless, Plaintiffs make the implausible leap that this speculation *by Dr.
Reddy's* in an internal Dr. Reddy's communication, indicated that Walgreens ███████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

(Compl. ¶ 281.)  Allegations of this nature are beyond a stretch; they border on make-believe.
They certainly cannot be credited under *Twombly*.  *See Twombly*, 550 U.S. at 556 (requiring
"plausible grounds to infer an agreement" at motion to dismiss stage).

Plaintiffs also allege instances where during the course of the thousands of
communications that Walgreens necessarily had with its generic drug suppliers, Walgreens
bantered with or showed empathy to a particular generic manufacturer about the activities of
another generic manufacturer.  (*See, e.g.*, Compl. ¶ 142 (alleging that Walgreens executive
responded to a Sandoz complaint that "employees at another manufacturer ████████████

████████████████████████████████████████████████"); *id.* ¶ 164 (alleging that
a Walgreens buyer sympathized with a manufacturer over another manufacturer's high share).)
But expressing sympathy with the competitive issues that a supplier faces certainly does not
suggest a "unity of purpose or a common design and understanding or a meeting of minds in a
conscious commitment to a common scheme," as the Supreme Court and Third Circuit have
found is required to join a conspiracy.  *Ins. Brokerage*, 618 F.3d at 315; *see also Monsanto*, 465
U.S. at 764; *Rossi*, 156 F.3d at 482 (affirming dismissal of additional distributor whose alleged
conspiratorial activity consisted of responding to "pressure and threats"); *In re Baby Foods
Antitrust Litig.*, 166 F.3d 112, 125 (3d Cir. 1999) (rejecting "sporadic exchanges of shop talk" as

FILED WITH REDACTIONS – PUBLIC VERSION

basis to infer conspiracy).  Rather, if anything, it suggests that Walgreens had to accept the market as it found it, even if competition was not always as intense as Walgreens would like.

Moreover, as this Court concluded in dismissing similar claims against McKesson, even "awareness of the manufacturer Defendants' alleged conspiracy . . . is not enough to permit the Court to infer [an agreement] to participate." *McKesson*, at 12.  Thus, certainly mere allegations that manufacturers made statements to Walgreens about their expectations of other manufacturers' behavior—even if they could be read as revealing the conspiracy—does not suggest that Walgreens joined the over-arching conspiracy that Plaintiffs posit, or any conspiracy.  (*See, e.g.*, Compl. ¶ 240 (alleging that Teva told Walgreens that ███████ ███████████████████████████████████████████████████████████); *id.* ¶ 241 (alleging that a manufacturer told Walgreens that it hoped to ██████████████ particular drug).)  Nor do allegations that, after wrangling not involving Walgreens, a manufacturer relayed its decision as to what business it was pursuing and what it was not pursuing.  (*See, e.g.*, *id.* ¶¶ 274-76 (discussing numerous communications internal to a manufacturer and not involving Walgreens, culminating in the allegation that a manufacturer ██████████████████████████████████████████████████████████████████████ ███████████████████████████████████████).)  If anything, such communications simply misdirected Walgreens from the alleged conspiracy by making it appear that the manufacturer had ██████████████████████████████████.

Plaintiffs' Complaint also tries to put wholly implausible spins on communications where Walgreens suggested to █████████████████████████████████████ or asked manufacturers to compile a "wish list" of multiple additional drugs they hoped to sell to Walgreens.  (*See, e.g.*, Compl. ¶ 165 (alleging

FILED WITH REDACTIONS – PUBLIC VERSION

communication with Taro suggesting Taro ██████████████████████████████

███████); *id.* ¶¶ 168-69 (alleging requests for a "wish list" of drugs a manufacturer desired to

sell); *id.* ¶¶ 266-73 (alleging efforts by Walgreens to play off two competing manufacturers, in

the context of numerous alleged direct communications among the manufacturers and other

communications not involving Walgreens).)  But, again, these communications simply

encouraged as many suppliers as possible to bid on its business, which is consistent with

Walgreens' independent and legitimate efforts to obtain supply at lower prices, a far more

plausible interpretation than Plaintiffs' unsupported assertion that a pharmacy chain like

Walgreens entered an over-arching conspiracy to increase the prices of 151 drugs, prices that

Walgreens, like the Plaintiffs, would have to pay.  To the extent a manufacturer indicated on a

wish list that it did not want to sell a certain drug or drugs to Walgreens, these communications

illustrate again how Walgreens was a victim of the alleged conspiracy, not a participant in it.

The implausibility of such assertions is further underscored by the fact that many of the

alleged indirect communications involving Walgreens occur in the midst of direct

communications between the allegedly colluding manufacturers.  (*See, e.g.*, Compl. ¶¶ 251-58

(alleging that despite numerous alleged direct, collusive communications between competing

manufacturers Teva and Sandoz regarding Temozolomide, vague communications involving the

customer and victim Walgreens were also part of the conspiracy); *id.* ¶¶ 270-73 (alleging that in

the midst of numerous direct, collusive communications between competing manufacturers

Actavis and Teva, ████████████████████████████████████████████████████

████████████████).  Plaintiffs never explain why colluding manufacturers who are already

speaking directly with each other would take the extremely high-risk, low-reward approach of

redundant, indirect communications going through one of the largest victims, particularly where

that victim has repeatedly sued them for antitrust violations.  The far more plausible explanation for the Walgreens communications is the obvious, innocent one.

Plaintiffs' allegations that Walgreens "sought to facilitate a customer allocation between Greenstone and Teva" regarding Cabergoline similarly fail to implicate Walgreens in Plaintiffs' conspiracy.  (Compl. ¶ 263.)  As recounted in the Complaint, Walgreens told Teva that Walgreens ████████████████████████████████████████████████████████████████ ███████████.  (Compl. ¶ 263.)  ███████████████████████ was, of course, in Walgreens' independent interest, and ████████████████████████████ obviously does not amount to participating in a market allocation conspiracy.  Certainly Walgreens has the right to play one competitor off against another in this way.  Plaintiffs' further allegation that Walgreens communicated to Teva that Greenstone was also ██████████████████████████ ███████████████████ (*see id.* ¶ 263) was simply (and obviously) Walgreens consoling Teva ██████████████████████████████████ by sharing some inconsequential and probably unreliable information it had heard in its own negotiations with Greenstone.  It certainly does not suggest participation in a 151-drug, or even a one-drug, conspiracy.

Likewise, Plaintiffs' allegations that the manufacturer Defendants sometimes received information from Walgreens about their competitors amount to nothing more than lawful gathering of competitive intelligence from a customer.  (*See, e.g.*, Compl. ¶ 238 (alleging that Teva wrote that it ████████████████████████████████████████████████████████ ████████████████████████████████████████); *id.* ¶¶ 252-58 (describing efforts by Sandoz to gather competitive intelligence regarding Teva's plans for a particular drug).)  Such efforts are not indicative of Walgreens' involvement in a conspiracy.  *See, e.g.*, *Monsanto*, at 762 ("A manufacturer and its distributors have legitimate reasons to exchange information about

prices and the reception of their products in the market."); *Baby Foods*, 116 F.3d at 126 ("[I]t makes common sense to obtain as much information as possible of the pricing policies and marketing strategies of one's competitors.").

Finally, Plaintiffs allege that in sporadic instances, Walgreens "passed on" communications from one manufacturer to another.  (*See, e.g.*, Compl. ¶ 243 (alleging that Walgreens "relayed a message from Dr. Reddy's to Teva" relating to why Dr. Reddy's was █████████████████████████████████); *id.* ¶ 244 (alleging a second communication regarding a drug more than two years later, in which Walgreens allegedly discussed with Teva the █████████████████████████████████████████████ █████████████████████████); *id.* ¶ 278 (similar).)  These allegations do not suggest Walgreens had joined a conspiracy.  Plaintiffs' assertions to the contrary are fanciful, impermissible extrapolations.  The far more plausible reason that Walgreens would have such discussions with a supplier (█████████████████████ █████████████████████) is that Walgreens was negotiating effectively by drumming up more competition.  Moreover, as the Third Circuit held in *Valspar Corp. v. E.I. Du Pont De Nemours and Co.*, 873 F.3d 185, 199 (3d Cir. 2017), allegations that third parties (specifically, an industry consultant) were used to communicate among conspirators calls into question the existence of the conspiracy; it does not implicate the third parties.  *A fortiori*, when the supposed message-carrier has filed 25 separate antitrust lawsuits against the alleged conspirators, and is also one of the largest potential victims of the alleged conspiracy.

In short, notwithstanding Plaintiffs' efforts to implicate Walgreens in the alleged manufacturers' conspiracy, because there are "obvious alternative explanations" for the facts

**FILED WITH REDACTIONS – PUBLIC VERSION**

alleged, Plaintiffs' conspiracy claims against Walgreens fail as a matter of law.  *See, e.g., Ins. Brokerage*, 618 F.3d at 322.

## II.     EACH OF PLAINTIFFS' CLAIMS AGAINST WALGREENS SHOULD BE DISMISSED

### A.     All of Plaintiffs' Claims Against Walgreens Are Based on the Same Faulty Allegations and Should Be Dismissed for the Same Reasons

The two main counts against Walgreens (Count 2 and Count 2(g)) should be dismissed for the reasons discussed above.  Count 2 is Plaintiffs' over-arching conspiracy claim as to the 151 drugs listed in Appendix A.  Count 2 contains a number of additional "sub-claims" that Plaintiffs purportedly assert against various defendants "if Count 2 is not sustained." (Compl. ¶¶ 760-66.)  Of these, only Count 2(g) is asserted against Walgreens and involves only thirteen drugs.  (*See* Compl. ¶ 766.)  This claim is further limited to direct purchases from Walgreens, McKesson, or ABC, although in fact, Plaintiffs have not alleged that any Plaintiff purchased these or any other drugs from Walgreens, which is not in the business of selling drugs to other pharmacies or hospitals.  (*Id.*)

The other four counts depend on the viability of Count 2 and therefore should be dismissed with Counts 2 and 2(g).  Count 1 is a claim for injunctive relief and Counts 3, 4, and 5 are claims under various state antitrust, consumer protection, and unjust enrichment laws, all based on the same allegations of conspiracy that are insufficient to state a claim.

### B.     Plaintiffs' Unjust Enrichment Claim Should Be Dismissed for the Additional Reason that Walgreens Received no Benefit from Dispensers

Count 5 should be dismissed for the additional reason that Plaintiffs do not allege that they or the class they seek to represent made purchases of drugs from Walgreens, which does not sell, and during the relevant period has not sold, to other pharmacies, to hospitals or, to use the language of the proposed class, to "dispensers of drugs."  (Compl. ¶¶ 737-740.)  At a minimum,

**FILED WITH REDACTIONS – PUBLIC VERSION**

an unjust enrichment claim requires "benefits conferred on defendant by plaintiffs."  *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162 (3d Cir. 2008) (affirming dismissal of unjust enrichment claims that lacked such allegations).  Other than conclusory statements of general applicability to all Defendants, there are no allegations that Walgreens received anything of value, directly or indirectly, from any of the Plaintiffs or any putative class member.  Nor, given Walgreens' position in the chain of distribution as a dispenser of drugs to retail customers, would any such allegations make sense or be remotely plausible.  Plaintiffs' unjust enrichment claim against Walgreens should be dismissed for this additional, independent reason.  *See also Boring v. Google Inc.*, 362 Fed. App'x 273, 282 (3d Cir. 2010) (affirming dismissal of unjust enrichment claim because "the complaint . . . does not allege any benefit conferred upon Google by the Borings, let alone a benefit for which the Borings could reasonably expect to be compensated").

## CONCLUSION

For the foregoing reasons, Walgreens respectfully requests that the Court grant its motion to dismiss and order that the Complaint be dismissed with prejudice in its entirety as against Walgreens.

**FILED WITH REDACTIONS – PUBLIC VERSION**

Dated: July 15, 2020

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: */s/ Brian Byrne*_____
    Brian Byrne (DC Bar No. 449881)
    Steven J. Kaiser (DC Bar No. 454251)
    Carl Lawrence Malm (DC Bar No. 1004489)

    2112 Pennsylvania Ave., NW
    Washington, DC 20037
    (202) 974-1500
    (202) 974-1999 (facsimile)
    bbyrne@cgsh.com
    skaiser@cgsh.com
    lmalm@cgsh.com

    *Counsel for Walgreens Boots Alliance, Inc.*

**FILED WITH REDACTIONS – PUBLIC VERSION**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of July 2020, the foregoing document was filed electronically with the Clerk of the Court by using the CM/ECF system, which will serve a copy on all interested parties registered for electronic filing, and is available for viewing and downloading via the Court's ECF System.

Dated: July 15, 2020

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: */s/ Brian Byrne*
    Brian Byrne (DC Bar No. 449881)
    Steven J. Kaiser (DC Bar No. 454251)
    Carl Lawrence Malm (DC Bar No. 1004489)

    2112 Pennsylvania Ave., NW
    Washington, DC 20037
    (202) 974-1500
    (202) 974-1999 (facsimile)
    bbyrne@cgsh.com
    skaiser@cgsh.com
    lmalm@cgsh.com

    *Counsel for Walgreens Boots Alliance, Inc.*