**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE:  GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL 2724**<br>**16-MD-2724**<br>**HON. CYNTHIA M. RUFE** |
| **THIS DOCUMENT RELATES TO:** | **Civil Action No.** |
| ***Reliable Pharmacy et al. v. Actavis Holdco U.S., Inc. et al.*** | **19-cv-6044**<br><br>**ORAL ARGUMENT REQUESTED** |

**PURCHASING DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF
THEIR JOINT MOTION TO DISMISS INDIRECT RESELLER PLAINTIFFS'
<u>AMENDED DECEMBER 2019 CLASS ACTION COMPLAINT</u>**

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................... 1

II. ARGUMENT .......................................................................................................... 2

    A. IRPs' Failure to Allege Any Agreement Among Purchasing Defendants Defeats IRPs' Overarching Conspiracy Claims as to Purchasing Defendants as a Matter of Law. ...................................................................................................................... 2

    B. IRPs Do Not Allege "Direct Evidence" That Purchasing Defendants Joined the Overarching or Individual Drug Conspiracies. ...................................................... 6

    C. IRPs Fail to Identify Circumstantial Evidence to Support an Inference That Purchasing Defendants Joined the Overarching or Individual Drug Conspiracies. 8

    D. IRPs Fail to Respond to Purchasing Defendants' Arguments on Individual Drug Conspiracies. ........................................................................................................ 14

    E. *Illinois Brick* Bars IRPs' Antitrust Damages Claims Against Purchasing Defendants. .......................................................................................................... 14

    F. IRPs' Pendent State Law Claims Should Be Dismissed. ...................................... 17

    G. Dismissal With Prejudice Is Warranted. .............................................................. 17

III. CONCLUSION ..................................................................................................... 18

# DEFINITIONS

1. "*Becton*" refers to the Seventh Circuit's decision in *Marion Healthcare, LLC v. Becton Dickinson & Co.*, 952 F.3d 832 (7th Cir. 2020).

2. "*IRPs*" refers to Indirect Reseller Plaintiffs, the plaintiffs in this case (No. 19-6044-CMR).

3. "*Marion*" refers to this Court's decision in *Marion Diagnostic Ctr., LLC v. McKesson Corp.*, 386 F. Supp. 3d 477 (E.D. Pa. 2019).

4. The nine "*Purchasing Defendants*" are:  AmerisourceBergen Drug Corp., H.D. Smith, LLC, Cardinal Health, Inc., The Harvard Drug Group, LLC, McKesson Corp., Morris & Dickson, Co., LLC, Red Oak Sourcing, LLC, Walgreens Boots Alliance, Inc., and Walgreens Boots Alliance Development GmbH ("WBAD").  WBAD has not been served in this action.

## I.       INTRODUCTION

IRPs' Opposition confirms that Purchasing Defendants' Motion to Dismiss should be granted.[1]  IRPs admit that they "do not allege that there was an agreement between one distributor and another."  Opp. at 8.  That concession alone dooms IRPs' overarching conspiracy claim against Purchasing Defendants because in an antitrust conspiracy case such as this one, which purports to involve multiple participants at different levels of the market, a plaintiff must allege a conspiracy among the similarly situated members of the conspiracy to survive a motion to dismiss.

IRPs' Complaint also fails because they do not allege any direct evidence of conspiracy as to Purchasing Defendants and their purported circumstantial evidence is implausible and makes no economic sense—both as to the overarching conspiracy and the drug-specific conspiracies.

IRPs have no response to the obvious alternative explanation for why Purchasing Defendants engaged in commercially sensitive discussions about product pricing and supply with their own suppliers.  Instead, they argue that the issue is a factual dispute that should be resolved after discovery.  That argument, however, ignores the critical plausibility review of the pleadings as mandated by *Twombly*, *Iqbal*, and Third Circuit law.

Finally, IRPs do not explain why this Court should change course when it has already rejected another indirect purchaser's attempt to circumvent *Illinois Brick* in the *Marion* case.  In pursuit of their claims, IRPs would have this Court disregard bedrock principles of antitrust law governing vertical relationships.  IRPs' arguments are so defective that dismissal with prejudice is appropriate and will advance this Court's efforts to move this MDL forward.

---

[1] Unless otherwise indicated, capitalized terms have the meaning provided for in the Motion to Dismiss. IRPs' Brief in Opposition to Purchasing Defendants' Joint Motion to Dismiss (ECF No. 84) is referred to as the "Opposition" or "Opp."  Purchasing Defendants' Memorandum of Law in Support of Their Joint Motion to Dismiss IRPs' December 2019 Amended Complaint (ECF No. 72-1) is referred to as Purchasing Defendants' "Motion to Dismiss" or "Mot."  IRPs' December 2019 Amended Complaint (ECF No. 61) is referred to as "Complaint" or "Compl."

II.   **ARGUMENT**

   A.   **IRPs' Failure to Allege Any Agreement Among Purchasing Defendants Defeats IRPs' Overarching Conspiracy Claims as to Purchasing Defendants as a Matter of Law.**

To downplay the unique nature of their overarching claims against Purchasing Defendants, IRPs assert that they "continue to allege the same basic manufacturer fair share conspiracy as alleged in earlier complaints, with the addition of the [Purchasing] Defendants as knowing aiders and abetters[2] of that same illegal agreement." Opp. at 8.[3]   However, adding Purchasing Defendants—which are vertical to Manufacturer Defendants in the supply chain—differentiates the novel theory in this Complaint from *any* prior decision by this Court regarding the Manufacturer Defendant conspiracy in this MDL.

The law here is clear:  where vertically related market participants are alleged to participate in an overarching conspiracy, a plaintiff must allege an agreement among the competitors at each level of the distribution chain to state a claim.  *See Marion Healthcare, LLC v. Becton Dickinson & Co.*, 952 F.3d 832, 841-42 (7th Cir. 2020) ("*Becton*"); Mot. at 9-10 (citing additional cases). This is an important requirement, but IRPs do not even try to satisfy it.  This case underscores the rationale for that requirement.  Simply put, it is inherently implausible to allege that Purchasing Defendants made a conscious commitment to a common scheme of an overarching, industry-wide conspiracy without also alleging that Purchasing Defendants conspired with each other in this scheme.  If (as IRPs concede) the distributors were still competing with each other, artificially higher prices on products sold by conspiring manufacturers would fall apart before the products

---

[2] IRPs completely ignore the fact that "aiding and abetting is not an independent theory of civil liability under the Sherman Act."  *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 495 (W.D. Pa. 2019) (citation omitted) (internal quotation marks omitted).

[3] Citations to the Opposition and Motion refer to the pagination of the unredacted versions of those filings.

reached downstream consumers.  For this reason, an alleged overarching conspiracy without such an agreement is implausible as to competing distributors as a matter of law.  *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 348 (3d Cir. 2010) (rejecting alleged conspiracy that failed to allege agreements among similarly situated defendants).

"In a case such as this one, where the plaintiffs allege that participants in a market at different levels of the distribution chain entered into a conspiracy, the plaintiffs must show that similarly situated members of the conspiracy coordinated not only with the manufacturer, but also with each other."  *Becton*, 952 F.3d at 841-42; *see also* Mot. at 9-10.  Though IRPs would prefer to ignore the fundamental differences in required allegations and proof associated with a two-level vertical conspiracy, IRPs must allege a horizontal agreement among the newly added Purchasing Defendants to implicate them in the overarching conspiracy.

IRPs admit such that allegations are absent from the Complaint (Opp. at 8), but try to evade this principle through misdirection.  They note that some courts have recognized "[t]he concept of a conspirator helping to facilitate a restraint of trade between co-conspirators at a different level of distribution"—but that language merely summarizes hub-and-spoke conspiracy law that IRPs do not satisfy.[4]  *Id.* at 9.  In support of their novel theory, IRPs rely on *Interstate Circuit v. United States*, 306 U.S. 208, 232 (1939), a case where there *was* agreement among the similarly situated members of the conspiracy at each level of distribution.  There, the Court concluded that the distributors could be liable because "knowing that concerted action was contemplated and invited, the distributors gave their adherence to the scheme and participated in it.  Each distributor was

---

[4] IRPs argue that they are *not* asserting a hub-and-spoke conspiracy, but their reliance on *Interstate Circuit*—the seminal hub-and-spoke conspiracy case—calls that into question.  *See Howard Hess Dental Labs. Inc. v. Dentsply Int'l Inc.*, 602 F.3d 237, 255 (3d Cir. 2010) (citing *Interstate Circuit* to note the "long history" of hub-and-spoke conspiracies in antitrust law).

advised that the others were asked to participate; each knew that cooperation was essential to successful operation of the plan." *Id.* at 226.  The alleged facilitators were all in cahoots *with one another*.  IRPs offer no similar allegations here, and in fact they expressly disclaim the existence of collusion among Purchasing Defendants.  Opp. at 8.

IRPs also spend considerable effort trying to distinguish *Insurance Brokerage* from this case, framing *Insurance Brokerage* as simply involving "a series of individual conspiracies."  Opp. at 11.  While the plaintiffs in *Insurance Brokerage* did allege individual conspiracies (just as IRPs do here), they also alleged a "global conspiracy."  618 F.3d at 313.  The Third Circuit rejected claims of that global conspiracy because the plaintiffs did not allege agreements among the defendants at the same level (i.e., among the brokers or among the insurers).  *Id.* at 348.

IRPs cite three categories of cases supposedly limiting *Insurance Brokerage*.  Opp. at 11-12.  First, IRPs look outside of antitrust law.  *United States v. Fattah*, 914 F.3d 112 (3d Cir. 2019), and *Weiss v. Bank of Am. Corp.*, 153 F. Supp. 3d 831 (W.D. Pa. 2015), are RICO cases that discussed the RICO aspects of *Insurance Brokerage*.[5]  These cases say nothing about antitrust law.[6]  IRPs rely on non-antitrust law for the assertion that "'certain types of circumstantial evidence become substantially more probative if it can be established that a conspiracy existed and the only remaining question is whether the defendant was a part of it.'"  *United States v. Williams*, 974 F.3d 320, 372 (3d Cir. 2020) (quoting *United States v. Pressler*, 256 F.3d 144, 151 (3d Cir. 2001)) (quoted at Opp. at 2).  IRPs neglect to include the very next sentence of *Williams*:  "'A simple

---

[5] While this Court cited *Fattah* and other non-antitrust conspiracy cases in its overarching conspiracy decision, such cases do not supply the applicable standard in an antitrust case.  *In re Generic Pharm. Pricing Antitrust Litig.*, 394 F. Supp. 3d 509, 529 (E.D. Pa. 2019).  Additionally, *Fattah* says nothing about conspiracy law in cases involving vertical elements present here.

[6] RICO cases are of dubious relevance to any antitrust case, but are especially irrelevant in cases involving *vertical* business dealings.  There is little practical concern about chilling wire fraud or extortion, but there is great concern about chilling legitimate vertical business activities.

buyer-seller relationship, however, without any prior or contemporaneous understanding beyond the sales agreement itself, is insufficient to establish that the buyer was a member of the seller's conspiracy.'" *Id.* (citation omitted). Even if a non-antitrust criminal case discussing a hypothetical "street-level drug dealer" were applicable (and it is not), IRPs have not adequately alleged any such "prior or contemporaneous understanding."

Next, IRPs cite *In re Railway Industry Employee No-Poach Antitrust Litig.* and argue that "the plaintiffs there alleged the defendants 'were members of one overarching horizontal agreement,' as IRPs do here." Opp. at 11 (citation omitted). The key difference, conspicuously missing, is that those defendants "each entered into bilateral agreements *with* their two largest competitors." *Railway*, 395 F. Supp. 3d at 487-88 (emphasis in original). And, not surprisingly, *Railway* acknowledges that "[a] restraint among competitors—called 'horizontal,' as opposed to 'vertical' restraints on market participants at different points in a product's supply chain—is more rigorously scrutinized for an antitrust violation because it could more easily facilitate competitive harms[.]" 395 F. Supp. 3d at 479 (quoting P. Areeda & H. Hovenkamp, FUNDAMENTALS OF ANTITRUST LAW § 14.11[A] (4th ed. Supp. 2017)) (internal quotation marks omitted).

Finally, in *Hinds County, Miss. v. Wachovia Bank N.A.*, 700 F. Supp. 2d 378 (S.D.N.Y. 2010), the court simply considered the plausibility of allegations against certain defendants; it did not address the legal question of whether an agreement is required among the similarly situated members of a multi-level conspiracy. *See id.* at 393-98.

In short, vertical relationships are fundamentally different from horizontal ones. This is a longstanding tenet of antitrust law, and it is why courts require horizontal agreement among all similarly situated co-conspirators in an overarching conspiracy. A holding to the contrary would risk chilling the procompetitive and lawful vertical relationships between suppliers and their

customers—a risk the Supreme Court warned against decades ago in the context of vertical agreements.  *See Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 763 (1984); *Ins. Brokerage*, 618 F.3d at 321 ("'[M]istaken inferences' of conspiracy from ambiguous circumstantial evidence 'may chill the very conduct the antitrust laws are designed to protect'" (citation omitted)).  IRPs' failure to plead a horizontal conspiracy among Purchasing Defendants defeats their overarching conspiracy claims.

> ### B. IRPs Do Not Allege "Direct Evidence" That Purchasing Defendants Joined the Overarching or Individual Drug Conspiracies.

IRPs are wrong in saying that they allege "direct" evidence of Purchasing Defendants' conscious commitment to any individual drug conspiracy, much less an overarching conspiracy. IRPs have offered no "evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted."  *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 118 (3d Cir. 1999).  There are no allegations close to being "tantamount to an acknowledgment of guilt" or "an outright confession."  *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 662 (7th Cir. 2002).

In support of the argument that they have alleged direct evidence of Purchasing Defendants' agreement, IRPs cite to their interpretation of a few conversations where a Purchasing Defendant allegedly agreed to convey information about market share to one or more Manufacturer Defendants.  Opp. at 6-7, 12-13.  But none of these allegations constitute direct evidence because they do not explicitly evidence an individual Purchasing Defendant's conscious commitment to the alleged "fair share" conspiracy.  Such inference-requiring communications are far from "direct evidence" of collusion.  *See, e.g.*, *Hyland v. HomeServices of Am., Inc.*, 771 F.3d 310, 319 (6th Cir. 2014) (rejecting statements that were "ambiguous at best" as direct evidence).  Instead, the "obvious alternative explanation"—that a particular Purchasing Defendant was discussing supply

management and pricing issues on products it purchased from its vertically situated suppliers, comparing supplier offerings, and perhaps even playing suppliers off against each other—renders IRPs' speculation implausible.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007) (citing "obvious alternative explanation" for the conduct in question).

IRPs' argument is nearly identical to the one rejected in *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212 (3d Cir. 2011), where the Third Circuit held that "telephone conversations regarding Factory 2-U's creditworthiness and whether the individual Factors would decline or extend credit" were not direct evidence because "none of these allegations specify a time or place that any actual agreement to fix credit terms occurred, nor do they indicate that any particular individuals or Factors made such an agreement."  *Id.* at 225.  Likewise, in *Baby Food*, the Third Circuit held that exchanging price information and a memo that referenced a "truce" did "not make out a case of direct evidence" because plaintiffs "have been unable to present evidence of conspiracy to fix prices without drawing on inferences[.]"  166 F.3d at 118-21.

IRPs' remaining arguments that they have alleged direct evidence are similarly unpersuasive.  They contend that the lack of an indictment or guilty plea cannot define the contours of a civil case.  Opp. at 13.  Purchasing Defendants do not argue otherwise; however, the absence of any indictment or guilty plea concerning Purchasing Defendants demonstrates the absence of that form of potential direct evidence.  IRPs also argue that "[r]egarding direct evidence," their Complaint is "quite different" from the Court's prior decision in *Marion*.  Opp. at 14. While IRPs' Complaint may contain different allegations than the *Marion* complaint, neither contain any direct evidence of agreement as to any Purchasing Defendant, and for good reason:  there is none.

**C.    IRPs Fail to Identify Circumstantial Evidence to Support an Inference That Purchasing Defendants Joined the Overarching or Individual Drug Conspiracies.**

IRPs' Opposition also fails to identify circumstantial evidence supporting an inference that Purchasing Defendants participated in the alleged Manufacturer Defendant conspiracies.  The purpose of the "circumstantial evidence" inquiry is to determine whether a plaintiff's conspiracy allegations are plausible.  *Burtch*, 662 F.3d at 225.  Here, IRPs fail to provide sufficient circumstantial evidence to support their conspiracy claims for three independent reasons:  (1) IRPs' theory of Purchasing Defendants' participation is implausible because it makes no economic sense, (2) IRPs have not identified and cannot identify any cognizable "parallel conduct" between Purchasing and Manufacturer Defendants, and (3) IRPs have failed to identify "plus-factors," i.e., context for the parallel conduct that "suggest[s] a preceding agreement."  *Twombly* 550 U.S. at 557, 570.

**1.    IRPs' Claims Against Purchasing Defendants Defy Logic.**

Without direct evidence, IRPs must plead "'circumstantial evidence (and the reasonable inferences that may be drawn therefrom) to prove a conspiracy.'"  *In re Generic Pharm. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 440 (E.D. Pa. 2018) (citation omitted).  The key inquiry is whether the plaintiffs' claim is *plausible*.  Courts have been wary of circumstantial evidence that presupposes sophisticated companies acting in ways that make no economic sense.  *See, e.g.*, *Twombly*, 550 U.S. at 567-68.

IRPs' claims hinge on an irrational premise.  Their incredible theory—that each Purchasing Defendant separately joined a conspiracy to fix the prices manufacturers charge to them—strains credulity even more now that IRPs have expressly confirmed that they made no allegation of horizontal agreements among Purchasing Defendants.  *See* Opp. at 8.  Without assurances that their competitors would pay high prices also, Purchasing Defendants would have risked being

undercut by other Purchasing Defendants who bought product from a different manufacturer.  IRPs try to explain away this obvious hole in their logic by noting that the majority of the purchasing volume was controlled cumulatively by Purchasing Defendants, so they did not have to worry about other non-defendant distributors stepping up and filling their customers' demand at lower prices.  Opp. at 17-18.  But that explains nothing; because IRPs admit that Purchasing Defendants did not agree among themselves to fix resale prices, Purchasing Defendants faced increased prices in buying product, but continued competing *with one another* in reselling it.  IRPs have failed to allege a horizontal agreement among distributors and therefore do not set forth any plausible way in which the alleged "aiding and abetting" by Purchasing Defendants makes economic sense.

IRPs further contend that their theory is plausible because Purchasing Defendants "engaged in this conduct to prevent price erosion because higher manufacturers' prices to them resulted in increased profits on the sales of their price-fixed drugs."  Opp. at 7.  However, as this Court has previously explained, "'[p]rofit is a legitimate motive in pricing decisions, and something more is required before a court can conclude that competitors conspired to fix pric[es].'"  *Marion*, 386 F. Supp. 3d at 485 (alterations in original) (citation omitted).  And again, IRPs have disavowed that the competing Purchasing Defendants conspired among themselves.  In any event, if certain Purchasing Defendants earned more when market prices were higher, those Purchasing Defendants would have an independent motive to accept higher prices through their own independent choices, irrespective of a conspiracy.  The allegation that certain Purchasing Defendants benefited from price increases thus fails to support an inference of a conspiracy.

## 2. **IRPs Do Not Allege Any Parallel Conduct as to Purchasing Defendants.**

IRPs also fail to plead conspiratorial conduct by Purchasing Defendants through circumstantial evidence.  In response to the requirement that they plead that Purchasing Defendants engaged in some form of improper parallel conduct, IRPs offer a groundbreaking theory for which

they are unable to cite any supporting case law:  IRPs argue that Purchasing Defendants acted in parallel with the manufacturers because they used some of the same language in emails.  Opp. at 15 ("In this case, the conduct that is parallel between the manufacturers and the distributors . . . is the Distributors' consistent facility with the terms of the fair share conspiracy.").  IRPs do not cite to—and Purchasing Defendants are not aware of—any court ever holding that defendants' use of similar words amounts to parallel conduct for purposes of establishing a conspiracy.

IRPs rely on *In re Processed Egg Products*, 821 F. Supp. 2d 709, 718 (E.D. Pa. 2011), for the proposition that they do not need to "plead simultaneous price increases—or that the price increases were identical—in order to demonstrate parallel conduct."  Opp. at 15.  But that case is inapposite.  IRPs do not seek to compare the timing, magnitude, or any other aspect of Purchasing Defendants' conduct with that of Manufacturer Defendants.  The alleged "parallel conduct" is the underlying interaction between entities that exist to interact with each other in the same industry— i.e., suppliers and their customers.  But the requisite "parallel conduct" cannot just be conduct that one would expect to see in any vertical relationship.  *See Ins. Brokerage*, 618 F.3d at 328.  By their very nature, parallel conduct cases involve horizontally situated actors.  There is simply no authority for attributing parallel conduct to actors at different levels of the distribution chain.

Moreover, the inferences that can be drawn from the allegation that Purchasing Defendants used the same language are especially limited given the vertical relationship between Purchasing Defendants and Manufacturer Defendants.  These entities lawfully interact every day using the parlance of their industry, and there are legitimate reasons for Purchasing Defendants to speak in terms of target market shares, price increases, new entrants, and potential supply disruptions with their suppliers—namely, ensuring a "persuasive[] and efficient[]" distribution system.  *Monsanto*, 465 U.S. at 763-64. Each Purchasing Defendant's relationship with Manufacturer Defendants is

fundamentally vertical.   Antitrust law recognizes that dealings between vertically related companies are typically procompetitive, and therefore it seeks to avoid interfering with them.   As the leading antitrust treatise explains, "[b]ecause dealer-manufacturer information exchanges are natural and often unavoidable aids to efficient distribution, inferring conspiracies from them would unfairly interfere with rational distribution."   P. Areeda & H. Hovenkamp, ANTITRUST LAW ¶ 1438e (4th ed. 2020).

### 3.   IRPs Do Not Allege Any Plus Factors as to Purchasing Defendants.

IRPs likewise fail to allege "plus factors" suggesting that the so-called parallel use of similar language occurred "in a context that raises a suggestion of preceding agreement." *Twombly*, 550 U.S. at 557.   First, IRPs argue that this "Court has already held that IRPs' earlier complaint 'alleged facts implying the existence of a traditional conspiracy:   inter-defendant communications, trade association leadership, membership, and meeting attendance, and ongoing state and federal investigations into generic drug pricing.'"   Opp. at 16 (citation omitted).   But all of those allegations relate solely to Manufacturer Defendants, not to Purchasing Defendants—a line IRPs repeatedly attempt to blur.   Government investigations into Manufacturer Defendants and Manufacturer Defendant attendance at industry events no more suggest participation in the conspiracy by Purchasing Defendants than by IRPs themselves.   Unlike in previous motions to dismiss in this MDL, the fact that Purchasing Defendants are communicating with Manufacturer Defendants is not probative of any wrongdoing because these defendants sit at different levels of the supply chain and *need* to communicate with each other in the ordinary course of business.

Second, IRPs argue that Purchasing Defendants had a motive to conspire with Manufacturer Defendants.   Although IRPs do not explain how the alleged scheme could be profitable to Purchasing Defendants absent a downstream horizontal agreement, they point to various alleged examples of Purchasing Defendants supporting price increases as evidence that

they were motived to pay higher prices.  Opp. at 7.  Even assuming Purchasing Defendants were prepared to pay higher prices in certain cases, that does not alone suggest a motive to conspire because there are legitimate, unilateral, and procompetitive reasons for paying higher prices in certain circumstances.  As explained in Purchasing Defendants' Motion to Dismiss, the most plausible reason is to ensure stable supply.  Mot. at 18-19 (citing *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1202 (9th Cir. 2012)) (noting that "increasing prices" are "fully consistent with a free, competitive market").

Third, IRPs argue that Purchasing Defendants "were not coincidentally mentioning stray pieces of information about new entrants, share balance, competitors' intentions, and the status of bids," and "[i]f the [Purchasing Defendants'] story were consistent with reality, IRPs would never have found evidence of their encouraging price increases or encouraging manufacturers to walk away from business."  Opp. at 19.  Again, IRPs' argument misses the mark.  The relevant question is not whether the information was "stray" or "coincidentally" shared, nor is the question whether Purchasing Defendants ever encouraged certain pricing or bidding outcomes.  The relevant inquiry is (i) whether such encouragement plausibly suggests that a purchaser joined a conspiracy to raise prices to itself, or (ii) whether such encouragement is readily explained by the "obvious alternative explanation" of independent motive and conduct, so as to render implausible the allegations of a conspiracy "to do what was only natural anyway."  *Twombly*, 550 U.S. at 566-67.  As discussed, the types of communications alleged here are simply not indicative of vertically related entities joining a horizontal overarching conspiracy by their suppliers.  *See* Mot. at 16-20.

IRPs have no substantive response to these arguments.  Instead, they argue that it is improper for the Court to even consider Purchasing Defendants' arguments at the motion to dismiss stage, as "[p]laintiffs are not required to . . . definitively rule out all possible innocent

explanations" on a Rule 12 motion.  Opp. at 23.  IRPs therefore argue that a jury should decide whether the communications in question by Purchasing Defendants "carry the same meaning" as the communications between Manufacturer Defendants.  *Id.* at 14.  But that is not the law.  It is for the Court, not a jury, to decide at the pleading stage whether IRPs' allegations nudge their claims against Purchasing Defendants "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  The Court is required to answer that question by evaluating all of the Complaint's allegations with "its [own] judicial experience and common sense."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (noting that such an evaluation is a "context specific task").  If there is an "obvious alternative explanation" for Purchasing Defendants' conduct, then IRPs have failed to state a conspiracy claim as a matter of law.  *Twombly*, 550 U.S. at 567.  In determining whether IRPs have plausibly alleged that Purchasing Defendants joined the manufacturer-level conspiracy, the Court can accept as true IRPs' factual allegations (i.e., the contents of the cited communications), but not their conclusory and unwarranted speculation about the meaning or intent of those communications.  *In re Processed Egg Prods.*, 821 F. Supp. 2d at 716 ("[T]he Court need not accept as true 'unsupported conclusions and unwarranted inferences' or the plaintiff's 'bald assertions' or 'legal conclusions'" (citations omitted)).

Logic and common sense preclude the conclusion that the excerpted communications provide sufficient support of IRPs' claims against Purchasing Defendants to withstand dismissal. Moreover, this Court's experience with the claims and allegations against Manufacturer Defendants throughout this MDL confirms that the so-called "evidence" against Purchasing Defendants is not the same caliber, type, or substance as that levied against Manufacturer Defendants.  *See, e.g.*, Mot. at 5 (describing how IRPs attempt to link each Purchasing Defendant to just a small fraction of the 151-plus drugs involved in the alleged manufacturer conspiracy).

Accordingly, this Court should reject as implausible IRPs' claims that Purchasing Defendants' joined Manufacturer Defendants' conspiracy.

> **D.    IRPs Fail to Respond to Purchasing Defendants' Arguments on Individual Drug Conspiracies.**

As Purchasing Defendants argued in their Motion to Dismiss, the factual predicate for each individual conspiracy claim is the same as for the overarching conspiracy claim, and therefore those claims are equally deficient.  Mot. at 21-22.   Rather than suggesting conspiracy, the communications cited by IRPs show Purchasing Defendants negotiating with the manufacturers to improve the terms of their supply agreements, as well as the day-to-day relationship between a manufacturer and its distributors in which matters such as price, supply, and market share are routinely discussed.  IRPs ignored these arguments in their Opposition, and they are therefore waived.[7]  Accordingly, IRPs' alternative individual drug conspiracy claims against Purchasing Defendants should be dismissed.

> **E.    *Illinois Brick* Bars IRPs' Antitrust Damages Claims Against Purchasing Defendants.**

Despite the fact that IRPs are indirect purchasers for purposes of the Clayton Act, and therefore lack standing to seek damages under that statute, IRPs argue in their Opposition that *Illinois Brick* does not bar their federal antitrust damages claims because they "made purchases directly from the [Purchasing] Defendants."  Opp. at 20.  That argument is regurgitated from a previous attempt to bring claims against a distributor in this MDL.  *See* Opp. to McKesson Mot. at 15-18, *In re Generic Pharm. Pricing Antitrust Litig.*, No. 18-04137-CMR (E.D. May 2, 2019),

---

[7] *See Dreibelbis v. Scholton*, 274 F. App'x 183, 185 (3d Cir. 2008) (finding waiver when plaintiff "had ample opportunity to make th[e] argument in response to defendants' motion to dismiss and failed to do so"); *Levy-Tatum v. Navient Solutions, Inc.*, 183 F. Supp. 3d 701, 712 (E.D. Pa. 2016) (finding waiver on arguments that plaintiff failed to address in opposition to defendant's motion to dismiss).

ECF No. 81.  This Court rejected that argument then, and should do the same here.[8]  *See Marion*, 386 F. Supp. 3d at 487 ("Although Marion characterizes itself as a direct purchaser, the mechanics of the purchasing relationship set forth in the second amended complaint show otherwise. . . . Marion is 'the *second* purchaser in the chain of distribution' and is thus an indirect purchaser barred from seeking damages under the Clayton Act." (emphasis in original) (citation omitted)). Mental gymnastics aside, the economic reality is that IRPs are the second purchaser in the distribution chain and therefore are barred from seeking damages under the Clayton Act.

IRPs' argument also completely ignores controlling law on this point.  The Third Circuit has created a narrow exception for when the second purchaser of a price-fixed good may overcome the indirect purchaser bar:  the second purchaser must show that the first purchaser was "completely involved" in the alleged conspiracy.  *See Howard Hess Dental Labs v. Dentsply Int'l*, 424 F.3d 363, 378-79 (3d Cir. 2005) ("*Dentsply*").  As Purchasing Defendants previously argued, IRPs have not plausibly alleged that Purchasing Defendants joined Manufacturer Defendants' overarching or drug-specific conspiracies, let alone that they "'actively participated in the formulation and encouraged the continuation of an illegal scheme in substantially equal part with'" the upstream entity, as is required to demonstrate complete involvement.  Mot. at 26-27 (quoting *Royal Mile Co. v. UPMC*, No. 10-1609, 2013 U.S. Dist. LEXIS 138678, at *124 (W.D. Pa. Sept. 27, 2013)).

IRPs attempt to sidestep the Third Circuit's complete involvement test by claiming that "IRPs are *not* making any federal law claims against the manufacturers[,]" and instead "are *only*

---

[8] IRPs cite the Supreme Court's decision in *Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019), in support of the argument that they are not indirect purchasers.  Opp. at 20.  That argument was already rejected by this Court in *Marion*, which cited *Apple* favorably in support of dismissal of the *Marion* complaint.  *See Marion*, 386 F. Supp. 3d at n.75 & 77.

making federal law claims against [Purchasing] Defendants from whom they directly purchased overpriced drugs, and seek federal relief only for those purchases." Opp. at 20-21 (emphasis in original). IRPs misunderstand *Illinois Brick*. *Illinois Brick* stands for the simple proposition that "only direct purchasers from antitrust violators may recover damages" under the federal antitrust laws. *Dentsply*, 424 F.3d at 369. Thus, an indirect purchaser cannot evade *Illinois Brick* by suing only the party from whom it directly purchased the allegedly price-fixed good, as IRPs claim they have attempted to do here.[9] Buying goods from a dealer in a multi-level distribution chain does not make one a direct purchaser. If a plaintiff could circumvent the *Illinois Brick* rule as IRPs argue, the rule would be rendered meaningless.

IRPs' secondary argument—that Purchasing Defendants were completely involved in the alleged conspiracy—is conclusory and likewise falls short, as IRPs have not plausibly alleged that Purchasing Defendants' involvement in the alleged conspiracy was "'complete, voluntary and substantially equal'" to that of Manufacturer Defendants. Mot. at 26-27 & n.17 (quoting *Wallach v. Eaton Corp.*, 814 F. Supp. 2d 428, 437 (D. Del. 2011)).

Simply put, IRPs cannot escape the economic realities of this case.[10] They purchased drugs from certain Purchasing Defendants—the second transaction in the supply chain, *after* Purchasing Defendants directly purchased from Manufacturer Defendants. Regardless of IRPs' selective

---

[9] IRPs' argument is further undermined by the complete absence of allegations that IRPs purchase from the Red Oak or Walgreens Purchasing Defendants, directly or indirectly.

[10] IRPs also argue that because they "are not seeking to collect damages from the Manufacturers under federal antitrust laws," the *Marion* opinion does not apply to them. Opp. at 21. This argument fails for two reasons. First, it confirms that IRPs are in fact "two or more steps removed from the violator in a distribution chain" and are therefore barred from bringing their claims under federal law. *Apple*, 139 S. Ct. at 1520. Second, allowing IRPs to proceed against Purchasing Defendants under *federal* antitrust law and Manufacturer Defendants under *state* antitrust law would raise exactly the apportionment and duplicity of damages concerns that *Illinois Brick* was designed to prevent. *Ill. Brick Co. v. Illinois*, 431 U.S. 720, 737, 745-46 (1977).

exclusion of Manufacturer Defendants from their federal antitrust damages claims (Counts 2 and 2(a)-(g)), and because no exception to *Illinois Brick* applies, those claims should be dismissed as to Purchasing Defendants.

## F.     IRPs' Pendent State Law Claims Should Be Dismissed.

IRPs' sole argument in support of their state law claims against Purchasing Defendants is that the Court has allowed state law claims to survive dismissal in other cases in the MDL.  Opp. at 23-24.  However, as Purchasing Defendants have shown, this case is the only case in the MDL in which Purchasing Defendants are named as defendants, and they are situated very differently from Manufacturer Defendants against whom this Court has previously allowed state law claims to proceed.  Because IRPs' state law claims are derivative of their federal claims and depend on the same deficient conspiracy allegations, such claims therefore should be dismissed for the same reasons.  *See, e.g.*, *St. Clair v. Citizens Fin. Grp.*, 340 F. App'x 62, 65 n.2 (3d Cir. 2009) (dismissing state antitrust claim, after dismissing federal claim, because "the state law antitrust claims are only viable if the corresponding federal claims are sufficient").

## G.     Dismissal With Prejudice Is Warranted.

IRPs suggest that they have additional "evidence" against Purchasing Defendants and that they should be able to amend their Complaint while they "continue to receive and investigate files from the [M]anufacturer Defendants. . . ."  Opp. at 24.  If true, IRPs should seek leave to amend their complaint again, not mention it in passing in their Opposition.  IRPs also appear to be suggesting that they should be allowed to amend their Complaint at any point during discovery[11]

---

[11] Pursuant to competing proposals submitted by the End-Payor Plaintiffs, the State Attorneys General, and the Direct Purchaser Plaintiffs, discovery in the Bellwether cases (that IRPs have expressly asked the Court that they not participate in) would not be complete until April 2022.  Proposed Pretrial Order No. ___ (Case Mgmt. Order Scheduling Discovery, Motions, and Other Proceedings to Bring Direct DPPs' Bellwether Cases to Trial, *In re Generic Pharm. Pricing Antitrust Litig.*, No. 16-02724-CMR (E.D. Pa. Sept. 1, 2020),

based on facts that they do not presently have, and based solely on documents they hope to obtain from further investigation of other parties' documents.  Even if IRPs find additional "evidence" akin to what's alleged in their Complaint, it is irrelevant for the reasons stated herein.

Purchasing Defendants have no desire to continue to rehash IRPs' defective arguments or delay this Court's efforts in moving this MDL forward.  Purchasing Defendants appreciate that this case—the only one in which they are named as defendants—is but a small part of a complex multi-district litigation proceeding.  The repeated amendment of complaints adversely affects the forward progress of this MDL.  Purchasing Defendants respectfully request dismissal of IRPs' claims with prejudice.

## III.  CONCLUSION

IRPs try to shoehorn Purchasing Defendants into the Court's prior analysis of the traditional horizontal conspiracy alleged against Manufacturer Defendants.  But there is no legal support for extending that prior horizontal analysis to multiple vertically situated Purchasing Defendants who, IRPs admit, did not conspire among one another.  *See* Opp. at 8.  To grant IRPs leave to amend their defective claims against Purchasing Defendants, when IRPs already have access to millions of pages of documents and have already amended twice in this docket alone (*see* ECF Nos. 1, 3, 61), would only encourage IRPs to delay these proceedings further.  Accordingly, IRPs' claims as to Purchasing Defendants fail as a matter of law and should be dismissed with prejudice.

Dated:  November 12, 2020

Respectfully submitted,

*/s/ Michelle A. Mantine*
*On behalf of Purchasing Defendants*

---

ECF No. 1496-1; Notice of Filing of Proposed Schedule for the End-Payer Plaintiff and State Attorneys General Bellwether Cases,  *In re Generic Pharm. Pricing Antitrust Litig.*, No. 16-02724-CMR (E.D. Pa. Sept. 1, 2020), ECF No. 1497.

| | |
|---|---|
| *Counsel for AmerisourceBergen Drug Corp. and H.D. Smith, LLC*<br><br>*/s/ Michelle A. Mantine*<br>*(PA Bar # 203102)*<br>Michelle A. Mantine<br>Christopher R. Brennan<br>Courtney B. Averbach<br>Danielle L. Stewart<br>**REED SMITH LLP**<br>225 Fifth Avenue<br>Pittsburgh, PA 15222<br>412-288-4268/4583<br>mmantine@reedsmith.com<br>cbrennan@reedsmith.com<br>caverbach@reedsmith.com<br>dstewart@reedsmith.com | *Counsel for McKesson Corporation*<br><br>*/s/ Abram J. Ellis (w/consent)*<br>*(D.C. Bar # 497634)*<br>Abram J. Ellis<br>Sara Y. Razi<br>Joshua G. Hazen<br>**SIMPSON THACHER & BARTLETT LLP**<br>900 G Street NW<br>Washington, DC 20001<br>202-636-5579<br>aellis@stblaw.com<br>sara.razi@stblaw.com<br>joshua.hazan@stblaw.com |
| *Counsel for Cardinal Health, Inc. and The Harvard Drug Group, LLC*<br><br>*/s/ Jason C. Murray (w/consent)*<br>*(CA Bar # 169806)*<br>Jason C. Murray<br>Robert B. McNary<br>Jordan Ludwig<br>**CROWELL & MORING LLP**<br>515 South Flower Street, 40th Floor<br>Los Angeles, CA 90071<br>213-443-5590<br>jmurray@crowell.com<br>rmcnary@crowell.com<br>jludwig@crowell.com | *Counsel for Walgreens Boots Alliance, Inc.*<br><br>*/s/ Brian Byrne (w/consent)*<br>*(D.C. Bar # 449881)*<br>Brian Byrne<br>Steven J. Kaiser<br>Carl Lawrence Malm<br>**CLEARY GOTTLIEB STEEN & HAMILTON LLP**<br>2112 Pennsylvania Avenue NW, Suite 1000<br>Washington, DC 20037<br>202-974-1500<br>bbyrne@cgsh.com<br>skaiser@cgsh.com<br>lmalm@cgsh.com |
| *Counsel for Red Oak Sourcing, LLC*<br><br>*/s/ John F. Zabriskie (w/consent)*<br>*(IL Bar # 6187887)*<br>John F. Zabriskie<br>Benjamin R. Dryden<br>**FOLEY & LARDNER LLP**<br>321 N. Clark Street, Suite 3000<br>Chicago, IL 60654<br>312-832-5199<br>jzabriskie@foley.com<br>bdryden@foley.com | *Counsel for Morris & Dickson Co., LLC*<br><br>*/s/ Barry Barnett (w/consent)*<br>*(TX Bar # 01778700)*<br>Barry Barnett<br>Thomas W. Paterson<br>Drew Hansen<br>**SUSMAN GODFREY LLP**<br>8115 Preston Road, Suite 575<br>Dallas, Texas 75225<br>866-754-1900<br>bbarnett@susmangodfrey.com<br>tpaterson@susmangodfrey.com<br>dhansen@susmangodfrey.com |

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of November 2020, the foregoing document was filed electronically with the Clerk of the Court by using the CM/ECF system, which will serve a copy on all interested parties registered for electronic filing, and is available for viewing and downloading via the Court's ECF System.

Dated:  November 12, 2020

Respectfully submitted,

By: */s/ Michelle A. Mantine*
Michelle A. Mantine

**REED SMITH LLP**
225 Fifth Avenue
Pittsburgh, PA 15222
412-288-4268
mmantine@reedsmith.com