**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL No. 2724** <br> **16-MD-2724** <br><br> **CIVIL ACTION NO.** <br><br> **19-cv-6044** |
| **THIS DOCUMENT RELATES TO:** <br><br> **RELIABLE PHARMACY, et al.,** <br><br> *Plaintiffs* <br><br> **v.** <br><br> **ACTAVIS HOLDCO US, INC., et al.,** <br><br> *Defendants* | **ORAL ARGUMENT REQUESTED** |

**WALGREENS BOOTS ALLIANCE, INC.'S  REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS**

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT .................................................................................................................................... 2

    I.    PLAINTIFFS PROVIDE NO PLAUSIBLE MOTIVE FOR WALGREENS TO ENTER THE
CONSPIRACY THEY POSIT ................................................................................................. 2

    II.    BECAUSE PLAINTIFFS CONFIRM THAT WALGREENS RECEIVED NO BENEFIT FROM
PLAINTIFFS, THEIR UNJUST ENRICHMENT CLAIM (COUNT 5) AGAINST WALGREENS
SHOULD BE DISMISSED ...................................................................................................... 6

CONCLUSION ................................................................................................................................. 6

# TABLE OF AUTHORITIES

**Federal Cases**

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................5

*Boring v. Google Inc.*,
  362 Fed. App'x 273 (3d Cir. 2010)..........................................................................6

*Burtch v. Milberg Factors, Inc.*,
  662 F.3d 212 (3d Cir. 2011)..................................................................................2, 4

*Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*,
  637 F.2d 105 (3d Cir. 1980)....................................................................................2

*In re Generic Pharm. Pricing Antitrust Litig.*,
  386 F. Supp. 3d 477 (E.D. Pa. 2019) .....................................................................2

*In re Ins. Brokerage Antitrust Litig.*,
  618 F.3d 300 (3d Cir. 2010)..................................................................................2, 4

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986).................................................................................................4

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
  465 U.S. 752 (1984).................................................................................................2

*Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Corp.*,
  801 F. Supp. 2d 1163 (D.N.M. 2011) .....................................................................3

*Sovereign Bank v. BJ's Wholesale Club, Inc.*,
  533 F.3d 162 (3d Cir. 2008).....................................................................................6

*Valspar Corp. v. E.I. Du Pont De Nemours and Co.*,
  873 F.3d 185 (3d Cir. 2017).....................................................................................3

**Docketed Cases**

*Marion Diagnostic Ctr. v. McKesson Corp.*,
  No. 18-4137 (E.D. Pa.) ............................................................................................2

Defendant Walgreens[1] hereby submits its separate reply memorandum in support of the motion to dismiss the Amended December 2019 Complaint (the "Complaint").  Walgreens fully joins, adopts, and incorporates by reference the Joint Reply Memorandum, ECF 89.

## INTRODUCTION

Plaintiffs' brief opposition to Walgreens' motion to dismiss confirms that the motion should be granted.  Plaintiffs have no response to the fact that Walgreens, like the members of the proposed IRP class, is a chain of drug stores that has nothing to gain and everything to lose from higher prices for generic drugs.  It is neither a drug manufacturer nor a drug distributor.

Nothing in Plaintiffs' opposition negates the fact that Walgreens was a victim of the alleged conspiracy.  Indeed, in its opening brief, Walgreens challenged Plaintiffs to explain the economic basis to infer otherwise.  Not surprisingly, Plaintiffs' opposition confirms there is no response.  Instead, Plaintiffs suggest—using speculation that is nowhere in their Complaint—that on certain occasions, certain individual Walgreens employees may have had a personal motivation to try to find out information about one manufacturer's plans from another.  Reliance on that theory only highlights that there are not sufficient allegations in the Complaint from which it could plausibly be inferred that Walgreens made a conscious commitment to join the vast conspiracy that Plaintiffs posit.  Moreover, Plaintiffs have no answer to their own allegations that the manufacturers intentionally worked to deceive Walgreens.  In the end, Plaintiffs' effort to rope Walgreens into their conspiracy theory simply makes no sense.  In reality, Walgreens was one of the largest victims of the alleged manufacturer conspiracy.

---

[1] "Walgreens" as used here refers to Walgreens Boots Alliance, Inc. as explained in Walgreens' Memorandum of Law in Support of Motion to Dismiss, ECF 75, ("Mem.") at 1 n. 1.

# ARGUMENT

## I.  PLAINTIFFS PROVIDE NO PLAUSIBLE MOTIVE FOR WALGREENS TO ENTER THE CONSPIRACY THEY POSIT

As discussed in Walgreens' opening memorandum, to go forward, the Complaint must allege facts giving rise to the plausible inference that Walgreens and the allegedly conspiring manufacturer Defendants had "a unity of purpose or a common design and understanding or a meeting of minds in a conscious commitment to a common scheme . . . ." *In re Generic Pharm. Pricing Antitrust Litig.*, 386 F. Supp. 3d 477, 482 (E.D. Pa. 2019) (hereinafter *McKesson*) (dismissing complaint in *Marion Diagnostic Ctr. v. McKesson Corp.*, No. 18-4137 (E.D. Pa.), at 5) (quoting *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 315 (3d Cir. 2010) (citations and internal quotation marks omitted)); *see also Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (requiring "conscious commitment to a common scheme to achieve an unlawful objective") (quoting *Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*, 637 F.2d 105 (3d Cir. 1980)).  "[T]he issue is whether the pleading delineates to some sufficiently specific degree that a defendant purposefully joined and participated in the conspiracy." *McKesson*, at 5-6. "Unilateral action, regardless of motivation, is not a violation of Section 1." *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 222 (3d Cir. 2011).

Plaintiffs' allegations against Walgreens stretch credulity beyond belief, and certainly beyond a plausible inference that Walgreens joined an overarching conspiracy involving hundreds of drugs that could only hurt Walgreens.  Indeed, Plaintiffs do not dispute that their allegations against Walgreens only extend to a few discrete communications involving a few drugs. [2]  Plaintiffs say that these few scattered communications made Walgreens a "conduit", Br.

---

[2] Plaintiffs also point to ordinary course communications between Walgreens and its generic drug distributor, ABC, *see* Br. at 16, but such vertical communications of course do not support

2

at 5, 20,[3] but fail to address Third Circuit precedent that manufacturers allegedly *using* a conduit to communicate does not *suggest* a conspiracy, much less that the conspiracy would *include* the so-called conduit and subject it to joint and several liability for the entire conspiracy.  *See, e.g.*, *Valspar Corp. v. E.I. Du Pont De Nemours and Co.*, 873 F.3d 185, 199 (3d Cir. 2017).  Plaintiffs' only response to *Valspar* is that it was decided at summary judgment, Br. at 19, but of course the legal principle is the same at the motion to dismiss stage.  *See, e.g.*, *Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Corp.*, 801 F. Supp. 2d 1163, 1195 (D.N.M. 2011) (granting motion to dismiss antitrust conspiracy claim and noting that, while standards differ, "the same legal principles" apply to motions for summary judgment and motions to dismiss).  Plaintiffs cite no law in support of their theory that spinning a few allegations to say that individuals served as a "conduit," even if plausible, is sufficient to implicate a party in a broad-ranging conspiracy involving hundreds of products and actors at multiple levels of the distribution chain.

Nor do Plaintiffs attempt to address the fact that *they themselves* allege that one of the chief ringleaders of the alleged conspiracy, Sandoz, actively lied to Walgreens to keep it in the dark.  *See* Compl. ¶ 619.  Such allegations demonstrate that Walgreens was not a knowing participant in the alleged conspiracy and, indeed, make any inference to the contrary implausible.

Similarly, Plaintiffs' response to the fact that Walgreens has been in active litigation with most of the generic manufacturers for years is that those were different cases.  *See* Br. at 16.  But, again, the undisputed existence of these many litigations filed over many years, in which

---

an inference of conspiracy.  *See* Purchasing Defs.' Mem. of Law in Supp. of Joint Mot. to Dismiss Indirect Reseller Pls.' Am. Class Action Compl., ECF 72-1 at 8 (collecting cases); Purchasing Defs.' Reply Mem. of Law in Supp. of Joint Mot. to Dismiss Indirect Reseller Pls.' Am. Class Action Compl., ECF 89 at 10-11.

[3] "Br." refers to the IRP Brief in Opposition to Individual Memoranda of Law, ECF 85.

Walgreens sued to force drug manufacturers to *lower* drug prices, undermines Plaintiffs'
inference that Walgreens made a conscious commitment to conspire with the same
manufacturers to *elevate* drug prices.

Unable to dispute that the conspiracy they posit would only hurt Walgreens, Plaintiffs
attempt to salvage their claims by arguing that "motive is not a required element of participation
in an antitrust conspiracy." Br. at 21. But motive is critical to the inquiry because, as the
Supreme Court held in *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574,
596-97 (1986), "if [defendants] had no rational economic motive to conspire, and if their conduct
is consistent with other, equally plausible explanations, the conduct does not give rise to an
inference of conspiracy." *See also Burtch*, 662 F.3d at 229 (affirming dismissal of conspiracy
claim because alleged conspiracy would have "reduce[d] the demand for" the alleged
conspirator's services and the alleged conspirator therefore had no "self-interested motivation" to
participate); *Ins. Brokerage*, 618 F.3d at 322 n.20 (citations omitted) ("[M]ost courts rely on the
*absence* of motivation or offense to self-interest to preclude a conspiracy inference from
ambiguous evidence or mere parallelism.").

Recognizing their legal argument is wrong, Plaintiffs offer speculation as to Walgreens'
"motives," which is not in their Complaint and would not pass the plausibility standard if it was.
Specifically, Plaintiffs' suggestion that Walgreens could gain by being "allowed to conduct more
business overall with Manufacturer Defendants" if it was in their good graces—even if true—
provides yet another reason why Walgreens employees may have expressed sympathy for a
manufacturer's plight in the couple of instances that Plaintiffs cite. Br. at 21. It certainly does
not suggest that Walgreens made a conscious commitment to the massive conspiracy Plaintiffs
allege. Nor does speculation that the personal motives of individual employees for "status" and

4

"friendship" caused a large corporation like Walgreens to join a massive conspiracy so strongly and obviously against its own economic interests. *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007) (requiring allegations to be viewed in light of "common economic experience"). Plaintiffs likewise provide no basis for their argument that a Court can infer a company joined a conspiracy because it "would not necessarily" have been harmed by it. Indeed, IRPs, which are Walgreens' pharmacy competitors, allege they *were* harmed by higher prices. *See* Compl. at ¶ 752-54 (alleging "injury" to "pharmacies and hospitals").[4]

Ultimately, the reason that Plaintiffs cannot allege a plausible motive is that Walgreens is a pharmacy that dispenses drugs, just like the IRPs. Contrary to IRPs' mischaracterization that Walgreens argued it was "gerrymandered out of the proposed [DPP] class," Br. at 18, Walgreens actually correctly observed that it was gerrymandered out of *the IRP class* because these Plaintiffs chose to excise it, and other "publicly traded" indirect resellers, from the putative class in *this* case, not the other cases in this MDL. *See* Mem. at 5. IRPs' gerrymandering highlights the implausibility of their allegations as to Walgreens, which is a pharmacy similarly situated to the IRPs (a fact that Walgreens' status as a publicly traded company does nothing to alter).

In the end, this Court must decide if it is plausible that Walgreens joined a conspiracy to raise the prices of hundreds of drugs to drugstores, including itself. Plaintiffs would have the Court make such a finding (1) in the absence of plausible allegations that Walgreens would have benefited from higher drug prices, (2) despite Walgreens having filed multiple lawsuits to force other members of the purported conspiracy to lower their drug prices, (3) ignoring Plaintiffs' admission that Manufacturer Defendants actively lied to Walgreens, and (4) even though

---

[4] In any event, Plaintiffs' speculation—which, like all of the speculation about Walgreens' possible motives, is not in the Complaint—is wrong. The fact is that Walgreens cannot simply raise prices downstream.

Walgreens is alleged to have been a target and a victim of many aspects of the conspiracy. There is nothing plausible about these assertions. Plaintiffs' claims against Walgreens should be dismissed with prejudice.

## II.   BECAUSE PLAINTIFFS CONFIRM THAT WALGREENS RECEIVED NO BENEFIT FROM PLAINTIFFS, THEIR UNJUST ENRICHMENT CLAIM (COUNT 5) AGAINST WALGREENS SHOULD BE DISMISSED

Plaintiffs dedicate two sentences in their brief to their unjust enrichment claim. This nonresponse should be recognized for what it is: a concession. Plaintiffs do not identify a single benefit "conferred on defendant by plaintiffs," which is a required element of an unjust enrichment claim. *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162 (3d Cir. 2008) (affirming dismissal of unjust enrichment claims that lacked such allegations). Indeed, Plaintiffs neither allege nor assert that they ever paid any money that ever found its way to Walgreens. Reaching outside their Complaint, Plaintiffs speculate that "[Walgreens] stood to benefit from joining the alleged conspiracy by bolstering its relationship with its supplier." Br. at 22. Even if there were such an allegation in the Complaint, it would be irrelevant because that would not be a benefit conferred on Walgreens *by any Plaintiff* or any member of the putative class. *See Boring v. Google Inc.*, 362 Fed. App'x 273, 282 (3d Cir. 2010) (affirming dismissal of unjust enrichment claim because "the complaint . . . does not allege any benefit conferred upon Google by the Borings, let alone a benefit for which the Borings could reasonably expect to be compensated"). Without such allegations, unjust enrichment claims fail as a matter of law.

## CONCLUSION

For the foregoing reasons and for the reasons stated in Walgreens' opening memorandum (ECF 75) and the joint briefs filed by all Purchasing Defendants (ECF 72-1 and 89), Walgreens respectfully requests dismissal of the entire Complaint against it with prejudice.

6

Dated:  November 12, 2020

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: */s/ Brian Byrne*
_____
        Brian Byrne (DC Bar No. 449881)
        Steven J. Kaiser (DC Bar No. 454251)
        Carl Lawrence Malm (DC Bar No. 1004489)

        2112 Pennsylvania Ave., NW
        Washington, DC 20037
        (202) 974-1500
        (202) 974-1999 (facsimile)
        bbyrne@cgsh.com
        skaiser@cgsh.com
        lmalm@cgsh.com

        *Counsel for Walgreens Boots Alliance, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of November 2020, the foregoing document was filed

electronically with the Clerk of the Court by using the CM/ECF system, which will serve a copy

on all interested parties registered for electronic filing, and is available for viewing and

downloading via the Court's ECF System.

Dated: November 12, 2020

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: */s/ Brian Byrne*
    Brian Byrne (DC Bar No. 449881)
    Steven J. Kaiser (DC Bar No. 454251)
    Carl Lawrence Malm (DC Bar No. 1004489)

    2112 Pennsylvania Ave., NW
    Washington, DC 20037
    (202) 974-1500
    (202) 974-1999 (facsimile)
    bbyrne@cgsh.com
    skaiser@cgsh.com
    lmalm@cgsh.com

    *Counsel for Walgreens Boots Alliance, Inc.*