**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL No. 2724 16-MD-2724 Hon. Cynthia M. Rufe |
| THIS DOCUMENT RELATES TO: | 19-cv-6044 |
| *Reliable Pharmacy et al. v. Actavis Holdco U.S., Inc. et al.* | ORAL ARGUMENT REQUESTED |

### RED OAK SOURCING, LLC'S INDIVIDUAL REPLY IN SUPPORT OF PURCHASING DEFENDANTS' JOINT MOTION TO DISMISS

Red Oak respectfully files this individual Reply to the IRPs' Opposition to the Individual

Memoranda of Law in Support of the Purchasing Defendants' Joint Motion to Dismiss (Doc. 85)

(the "IRPs' Individual Opposition" or "Indiv. Opp.").[1]

### ARGUMENT

Red Oak not been accused of participating in a single "subsidiary" conspiracy, yet it stands

accused generally of "aid[ing] and abet[ting]" the overarching conspiracy. Joint Opp. at 8. The

IRPs offer neither explanation nor precedent to reconcile that paradox. Instead, the IRPs confess

that the reason "why Red Oak was named as a Defendant" is because "some of the same employees

who [allegedly] participated in the overarching conspiracy while at Cardinal [*i.e.*, Red Oak's 50%

parent company] accepted new positions at Red Oak." Indiv. Opp. at 4. This is not enough to

state a claim against Red Oak. The defects in the IRPs' case against Purchasing Defendants like

Cardinal are explained in the Purchasing Defendants' Joint Reply, which Red Oak fully joins. But

---

[1] Capitalized terms used herein have the same definitions as used in Red Oak's Individual Memorandum of Law in Support of Purchasing Defendants' Joint Motion to Dismiss (Doc. 74) ("Red Oak's Opening Brief" or "Red Oak Opening Br."). The IRPs' Opposition to the Purchasing Defendants' Joint Memorandum (Doc. 84) is referred to as the "Joint Opposition" or "Joint Opp."

with respect to ***Red Oak***, the IRPs' case rests on a paltry number of allegations about conduct that

the IRPs admit "might not be so suspect" in an ordinary business environment.  *Id.* at 6.  The IRPs

thus ask this Court to ignore the precise holding of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

568 (2007), and infer an antitrust conspiracy from allegations for which there is an "obvious

alternative explanation:"  that a market structure where each manufacturer has roughly a "fair

share" is exactly what the Purchasing Defendants would expect to achieve through competition.

*See* Compl. ¶ 139 ("[I]f price competition were to occur, each manufacturer would 'naturally' end

up with roughly its fair share . . . .").  Finally, the IRPs fail to explain how Red Oak could have

any liability to the IRPs for either consumer protection violations or unjust enrichment, when Red

Oak is not alleged to have had any role in the sale or resale of any generic drugs to any IRPs.

A. <u>The IRPs Do Not Explain How Red Oak Could Have Participated in the Overarching Conspiracy Without Also Participating in a Single Subsidiary Conspiracy.</u>

The first and most fundamental argument in Red Oak's Opening Brief is that, despite the

IRPs accusing Red Oak of participating in the so-called "overarching" conspiracy to fix prices for

some 151 different generic drugs, they do not accuse Red Oak of participating in a ***single***

subsidiary conspiracy within this overarching scheme.  This is a critical defect.  The IRPs' (and

other Plaintiffs') entire theory of the case is that the "overarching" conspiracy consisted of "an

interdependent framework of trust . . . involving multiple drugs and trading of business on one

drug for business on another."  Compl. ¶ 140.  But the IRPs ask this Court to believe that Red Oak

is liable for a complex, "interdependent," 151-drug conspiracy, despite having no liability for a

single constituent part.  The IRPs do not even try to explain or defend this discrepancy.  They

neither name Red Oak as either a "Defendant" or "Co-Conspirator" to any of the 151 individual

drug conspiracies alleged in the Complaint, nor allege any conduct by Red Oak "that reached

2

beyond [any] individual drugs." *In re Generic Pharms. Pricing Antitrust Litig.*, 394 F. Supp. 3d 509, 526 (E.D. Pa. 2019).  Nor do the IRPs cite a single case (and Red Oak is aware of none[2]) for the proposition that a person or entity can participate in an "overarching" conspiracy without also participating in at least one of the subsidiary conspiracies—let alone a case so holding where the "overarching" conspiracy, such as the one alleged here, is supposedly made up of "interdependent" subsidiary conspiracies that involve "trading off" from one subsidiary conspiracy to another.

Rather than attempt to address this defect on the merits, the IRPs first misconstrue Red Oak's position to be that Red Oak should be dismissed because it "is not listed as a defendant and/or co-conspirator in *all* claims in the Complaint."  Indiv. Opp. at 8 (emphasis added).  But the point is not that Red Oak has not been named in *all* of the subsidiary conspiracies.  The point is Red Oak has not been named in *any* of them.

Next, the IRPs beg the question by asserting, without citation, that "Red Oak is, in fact, clearly named as a defendant and co-conspirator in numerous portions of the Complaint."  Indiv. Opp. at 8.  Respectfully, this statement is false.  Red Oak's Opening Brief went claim-by-claim to confirm that Red Oak has not been named—as either a "Defendant" or "Co-Conspirator"—to any of the 151 subsidiary conspiracies described in the Complaint.  *See* Red Oak Opening Br. at 3-4. The IRPs' failure to cite a single claim or paragraph in the Complaint to the contrary makes Red

---

[2] The IRPs try to deflect Red Oak's citation to *Precision Associates, Inc. v. Panalpina World Transport (Holding) Ltd.*, Case No. 08-CV-42 JG VVP, 2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011), by noting that it concerned "the threshold question of whether a plaintiff has sufficiently pled the existence of an overarching conspiracy."  Indiv. Opp. at 9.  This misses the point.  In *Precision Associates*, the plaintiff named thirteen entities as defendants to an "overarching" conspiracy claim without naming any of them as defendants to any subsidiary claims.  The court cited this pleading defect as "a pattern of ambiguity" that justified dismissing the overarching conspiracy claim altogether, even with respect to conspirators that were legitimately implicated in individual conspiracy claims.  2011 WL 7053807, at *27; s*ee also id.* at *18 n.18.  Here, of course, Red Oak does not seek dismissal of the overarching conspiracy claims that have already been sustained against the Manufacturing Defendants.  But *Precision Associates* certainly stands for the proposition that an "overarching" conspiracy claim cannot be made plausibly against a defendant like Red Oak that is not named as a participant in any subsidiary conspiracies.

Oak's point.[3]   Finally, the IRPs point their finger back at Red Oak, claiming that Red Oak's Opening Brief effectively "acknowledge[d] . . . conspiratorial conduct" by addressing the three allegations in the Complaint that pertain in any relevant way to Red Oak.  Indiv. Opp. at 9 (citing Red Oak Opening Br. at 5-9).  But in reality, Red Oak's Opening Brief explains why the three allegations that involve Red Oak *do not* support claims for conspiracy under well-settled, Third Circuit law.

In short, the IRPs fail to offer any explanation for how Red Oak could plausibly have participated in a complex, "interdependent" conspiracy without also participating in at least one subsidiary conspiracy.  Nor do they cite so much as a single case that has allowed such a bizarre theory to survive a motion to dismiss.  The IRPs' claims against Red Oak should be dismissed.

**B.**      **There Is No Allegation That Red Oak Participated in Any Conspiracy.**

The IRPs repeatedly make clear that the gravamen of their case is that the Purchasing Defendants somehow "aide[d] and abette[d]" the alleged manufacturer conspiracy.  Joint Opp. at 8.  In particular, the IRPs argue that "[t]he direct evidence cited on pages 6-7" of their Joint Opposition is "all that is necessary to deny [the Purchasing Defendants'] Joint Motion."  *Id.* at 14. But notably, the alleged "direct evidence" cited on pages 6 and 7 of the IRPs' Joint Opposition is silent about Red Oak.[4]  Thus, the only allegations the IRPs have made about Red Oak are the same

---

[3] Several sentences later, the IRPs cite Paragraphs 281, 358, and 385 as "specific allegations of actions of Red Oak that joined [sic] an overarching price-fixing conspiracy."  Indiv. Opp. at 9.  But none of these paragraphs name Red Oak as either a Defendant or a Co-Conspirator to any subsidiary conspiracies.  In fact, one of these paragraphs—Paragraph 281—does not even pertain to any alleged "actions of Red Oak."  Rather, that paragraph alleges a conspiracy for which Red Oak was the *victim.*

[4] This is not the first time the IRPs have made sweeping claims about the "Purchasing Defendants" while remaining silent about Red Oak.  The Complaint conclusorily asserts that "certain major drug distributors (namely Defendants Cardinal, AmerisourceBergen Drug Corp. ('ABC'), McKesson, Walgreens/WBAD, and Morris & Dickson) understood, agreed with, and did their part to achieve the common goals of the fair share conspiracy."  Compl. ¶ 162.  But Red Oak was left off of that list.  The Complaint also includes conclusory claims that other Purchasing Defendants "knowingly participated in the fair share conspiracy"—Compl. ¶¶ 182, 202, 214, 240, 282, 344, 352—but it makes no such claim against Red Oak.  *See also infra* n.10.

three paragraphs addressed in Red Oak's Opening Brief:  Paragraphs 281, 358, and 385.  ***None*** of these three allegations is included in the IRPs' supposed "direct evidence" or otherwise supports a claim against Red Oak.

With respect to Paragraph 281, Red Oak has explained—and the IRPs do not dispute—that Red Oak was alleged to be a ***victim*** of the conspiracy described in that paragraph.  With respect to Paragraph 358, all the Complaint alleges is that Red Oak asked a single manufacturer for information about "the current market share of each manufacturer for the requested drugs." Compl. ¶ 358.  As alleged, this was a purely vertical communication that, as a matter of law, "does not give rise to an inference of harm to competition."  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 330 n.27 (3d Cir. 2010).

With respect to Paragraph 385, all the Complaint alleges is that Red Oak told Teva how Sandoz might respond on a particular bid.  But the Complaint neither claims nor gives any basis for inferring that Red Oak made this comment to Teva based on any direction from or "meeting of the minds" with either Teva[5] or Sandoz.[6]  While the IRPs claim that Red Oak "involve[d] itself in these discussions," Indiv. Opp. at 8, this merely begs the question, because there are no facts pled to suggest that Red Oak had the slightest inkling that Teva and Sandoz were having "discussions" in the first place.  Instead, what the Complaint alleges is that, several days earlier, Teva and Sandoz spoke to each other thirteen times by telephone and once more by email to iron out their conspiracy. Thus, the claim that Red Oak then took action to "involve itself in these discussions" is so

---

[5] As Red Oak's Opening Brief notes—and the IRPs do not dispute—Paragraph 385 itself rules out the possibility that Red Oak might have been recruited into the conspiracy by Teva.  *See* Red Oak Opening Br. at 9 n.9.

[6] "To allege such an agreement . . . a plaintiff must allege facts plausibly suggesting a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement."  *Howard Hess Dental Labs. Inc. v. Dentsply International, Inc.*, 602 F.3d 237, 255 (3d Cir. 2010) (quotation omitted).  The IRPs have alleged none of these things.

superfluous as to be nonsensical.[7]  The IRPs want this Court to believe that just a few days after having fourteen direct communications with Teva to enter into a criminal conspiracy, Sandoz revealed the conspiracy to Red Oak so that Red Oak could deliver a fifteenth message.  This is implausible on its face.  Far from supporting the IRPs' claim, the inference from context and from the specific vertical comment in Paragraph 385[8] confirms that Red Oak *did not* know about the conspiracy in place between Teva and Sandoz.

Finally, it is significant that the IRPs' Individual Opposition acknowledges that the whole reason "why Red Oak is named as a Defendant" is that "some of the same employees who [allegedly] participated in the overarching conspiracy while at Cardinal accepted new positions at Red Oak."  Indiv. Opp. at 4.  The IRPs suggest (without citation to their Complaint or anything else) that these former Cardinal personnel "remained in contact with the same generic drug manufacturers and did not forget about the principles of the fair share understanding."  *Id.*  But there are no less than four fatal problems with this theory.  First, as the Purchasing Defendants' Joint Reply explains, the IRPs have failed to plausibly implicate Cardinal (or any other Purchasing Defendant) in any alleged conspiracy.  Second, a subsidiary—let alone a 50% subsidiary like Red Oak—"is a distinct legal entity and is not liable for the actions of its parent or sister corporations simply by dint of the corporate relationship."  *In re Ins. Broker Antitrust Litig.*, 618 F.3d at 341

---

[7] Instead, all the IRPs say is that that "the conspiracy did not always operate smoothly."  Indiv. Opp. at 8.  But this is no answer—rather, it is speculation that has absolutely nothing to do with Red Oak—nor is it consistent with what the Complaint actually says.  The Complaint makes very clear that the Teva-Sandoz conspiracy had already been agreed to *and* gone into effect before Red Oak allegedly spoke to Teva.  *See* Compl. ¶¶ 379-81.

[8] The IRPs quote an analogy about a street-level drug dealer who follows an organized gang's territorial rules.  *See* Indiv. Opp. at 2 n.2 and Joint Opp. at 2 n.4 (quoting *U.S. v. Pressler*, 256 F.3d 144, 151 (3d Cir. 2001)).  However, this analogy does not fit Red Oak allegedly warning Teva (the incumbent) about how Sandoz (the challenger) might react to an attempt by Teva to keep a contract.  To follow the IRPs' analogy, if a *customer* of the street-level drug dealer warned the dealer about how a rival drug dealer might react if the first dealer tried to sell drugs in the rival's turf, then that communication by the customer would tend to show that the customer is *unaware* that the two drug dealers were already in a conspiracy with each other.  Rather, the obvious alternative explanation for such a comment is that the customer is trying to prevent a conflict that could disrupt the consistency of supply for that product.

n.44.  The IRPs would need to state independent allegations of wrongdoing by Red Oak to sustain

a claim against it.  Third, it *of course* is true that any individuals who joined Red Oak from Cardinal

"remained in contact with the same drug manufacturers."  The whole point of Red Oak is to "source

and supply [Cardinal and CVS's] generic pharmaceutical products."  Compl. ¶ 89.  Thus, the mere

continuation of vertical communications with suppliers does not support an inference of

conspiracy.  Finally, assuming for sake of argument that Red Oak had hired individuals from a

co-conspirator, and those individuals "did not forget" about the conspiracy, even *that* would not

be enough to state a claim against Red Oak.  *See Marion Diagnostic Ctr., LLC v. McKesson Corp.*,

386 F. Supp. 3d 477, 484 (E.D. Pa. 2019) ("Marion offers no facts to show how 'likely' knowledge

of these former Mylan employees [now allegedly employed at McKesson] creates a reasonable

inference that McKesson agreed to participate in the alleged conspiracy . . . .").[9]  Instead, the IRPs

would need to plead additional facts plausibly showing that Red Oak or its employees purposefully

joined and participated in the alleged conspiracy.  Because the IRPs have not done so, their claims

against Red Oak should be dismissed.

     **C.**       **The IRPs Admit that From the Perspective of Red Oak, a "Fair Share" Market Structure is a Sign of Robust Competition.**

       The IRPs are also unable to answer Red Oak's argument that "a market structure where

every supplier has a 'fair share' is exactly what the Purchasing Defendants would hope to achieve

in a competitive market."  Red Oak Opening Br. at 7.  This argument follows directly from

Paragraph 139 of the Complaint:

> *[I]f price competition were to occur, each manufacturer would 'naturally' end up with roughly its fair share*, except at much lower prices (manufacturers would undercut one another until prices were close to cost).  *Fair share is a shortcut that arrives at the final 'natural' balance of share* by circumventing true competition

---

[9] *See also* Marion, 386 F. Supp. 3d at 486 ("Indeed, without more, even knowledge of the existence of an agreement amongst the manufacturing defendants to restrain competition is not enough to support an inference that McKesson was a co-conspirator." (quotation and alteration omitted)).

and its concomitant negative pressure on prices.  The shared goal is to short-circuit the market so that the same 'natural' balance of share can be established at a higher price than would occur without collusion.

Compl. ¶ 139 (emphasis added).  This allegation forces the IRPs' Individual Opposition to concede that "the end-states of a rigged market and a free and fair market could look the same."  Indiv. Opp. at 7.  But this concession reveals a fundamental flaw in the IRPs' claims.  From the perspective of a Purchasing Defendant, a "fair share" market structure is entirely consistent with healthy, "normal" competition.  There thus is an "obvious alternative explanation" for why each Purchasing Defendant might independently act on its own to push suppliers towards a "fair share" market structure:  the promotion of competition.  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 322-23 ("[A]llegations of conspiracy are deficient if there are 'obvious alternative explanations' for the facts alleged." (quoting *Twombly*, 550 U.S. at 567 (alteration omitted)).

In a revealing passage, the IRPs concede that the conduct alleged in Paragraph 358—obtaining information from one manufacturer about the market shares of other manufacturers—"might not be so suspect" if there was not already "evidence of a market allocation conspiracy." Indiv. Opp. at 6.  But because there is no such other evidence in the record to implicate *Red Oak*, a purely vertical communication of this sort is not enough on its own to state a claim.  The IRPs' exhortation for the Court to "draw all inferences" in their favor, Indiv. Opp. at 7, is effectively a request that the Court disregard the precise holding of *Twombly*.  "[T]here is no reason to infer that the companies had agreed among themselves to do what was only natural anyway." *Twombly*, 550 U.S. at 566; *see also Finkelman v. NFL*, 810 F.3d 187, 201 (3d Cir. 2016) ("[T]here is a difference between allegations that stand on well-pleaded facts and allegations that stand on nothing more than supposition.").  Discovery cannot proceed on an antitrust claim based solely on conduct that—in the normal, everyday business world—"might not be so suspect."

**D.**     **The IRPs Do Not Explain How Red Oak Can Be Liable for Either Consumer Protection Violations or Unjust Enrichment.**

Finally, the IRPs have ignored the argument that Count 4 (under state consumer protection statutes) and Count 5 (for unjust enrichment) must be dismissed against Red Oak, because there is no allegation that any IRPs ever bought any drugs either directly or indirectly from Red Oak.[10] The IRPs' failure to address this argument amounts to a waiver of the point.  The closest the IRPs come to addressing Red Oak's argument is by misleadingly citing Paragraph 281 for the proposition that "[t]he Complaint clearly alleges that IRPs purchased generic pharmaceuticals in transactions in which Red Oak was involved."  Indiv. Opp. at 11.  But as Red Oak has explained, Red Oak was only "involved" in the conspiracy alleged in Paragraph 281 to the extent it was allegedly a *victim* of that conspiracy.  Because the IRPs do not explain how, in the capacity as an alleged victim of price-fixing, Red Oak might be liable to the IRPs either under consumer protection laws or for unjust enrichment, Counts 4 and 5 must be dismissed.

## PRAYER FOR RELIEF

Red Oak respectfully requests that the claims against it, and all of the Purchasing Defendants, be dismissed with prejudice.

 Dated:  November 12, 2020

                                                                        Respectfully submitted,

                                                                        *s/ John F. Zabriskie*
                                                                        John F. Zabriskie (admitted *pro hac vice*)
                                                                        FOLEY & LARDNER LLP
                                                                        321 N. Clark St., Suite 3000

---

[10] As noted in Red Oak's Opening Brief, the Complaint alleges that many of the other Purchasing Defendants "distribute[ ] generic drugs throughout the country, including to one or more Plaintiffs," but it makes no such allegations against Red Oak.  *Compare* Compl. ¶¶ 82, 86, 90, 91 *with* ¶ 89.  Indeed, even the IRPs' Individual Opposition acknowledges that while "Red Oak arranges purchases from generic drug manufacturers . . . Cardinal then sells those drugs to pharmacies and hospitals such as the Plaintiffs."  Indiv. Opp. at 4.

Chicago, IL 60654-4762
Phone: 312.832.4500
Fax: 312.832.4700
jzabriskie@foley.com

Benjamin R. Dryden (admitted *pro hac vice*)
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
Phone: 202.672.5300
Fax: 202.672.5399
*bdryden@foley.com*

*Attorneys for Defendant Red Oak Sourcing, LLC*

10

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2020, the undersigned caused the foregoing

RED OAK SOURCING, LLC'S INDIVIDUAL REPLY IN SUPPORT OF PURCHASING

DEFENDANTS' JOINT MOTION TO DISMISS to be filed via the Court's CM/ECF system,

which sent notice to all counsel of record in this action.

*s/ John F. Zabriskie*
John F. Zabriskie
*Counsel for Defendant Red Oak Sourcing, LLC*
